902 A.2d 402

**In re ADOPTION OF J.E.F., C.J.U., N.G.F.**

**Appeal of Washington County Children and Youth Agency.**

**Nos. 29–31 WAP 2005.**

Supreme Court of Pennsylvania.

Argued Feb. 28, 2006.

Decided July 18, 2006.

Jason Kutulakis, Esq., for amicus curiae Dauphin County Children & Youth Services.

Joyce A. Hatfield–Wise, Esq., for Washington County Children and Youth Social Service Agency.

Andrew David Glasgow, Esq., for S.B. and D.B.

David Jon DiCarlo, Esq., for J.E.F., a minor (29 WAP 2005), C.J.U., a minor (30 WAP 2005) and N.G.F., a minor (30 WAP 2005).

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice CASTILLE.

This appeal presents two basic and inter-related questions arising out of the desire of appellees, the aunt and uncle of the three minor children who are the subject of the appeal, to adopt the children. The first question is whether Section 2711(a)(5) of the Adoption Act, 23 Pa.C.S. § 2101 *et seq.*, requires the consent of appellant Washington County Children and Youth Agency (the "Agency") for appellees to have standing to petition to adopt the children. The second question is whether this Court's holding in *In re Adoption of Hess,* 530 Pa. 218, 608 A.2d 10 (1992), which recognized that grandparents may intervene in adoption proceedings after parental rights have been terminated, logically supports a holding that the aunt and uncle here had standing to seek to adopt the children and to participate in the adoption proceedings below.[1] For the reasons that follow, we find that appellees do have standing. Accordingly, we affirm the decision of the Superior Court, which reversed and remanded the matter to the trial court.

L.F. is the biological mother of C.J.U., born July 31, 1991, J.E.F., born January 10, 1996, and N.G.F., born February 23, 1997. W.U. is the biological father of C.J.U., and K.F. is the biological father of J.E.F. and N.G.F. On October 2, 2003, by order of the Orphans' Court Division of the Court of Common Pleas of Washington County, the parental rights of the mother and both fathers were terminated, and the Agency was ordered to maintain custody of the children pending a final adoption decree. The two younger children continued placements in two separate foster homes, while C.J.U. remained in a residential group home.

Shortly thereafter, on November 26, 2003, appellees, who are the married sister and brother-in-law of L.F., filed petitions to adopt all three children, proposing to raise them

---

1. Although this Court's order granting review directed the parties to address four issues, *see In re Adoption of J.E.F.,* 583 Pa. 512, 880 A.2d 504 (2005), and the parties have complied, the issues are overlapping and may be most efficiently understood as summarized in the text.

together at their home in Maryland.[2] C.J.U., who was over 12 years old at the time, signed a consent for adoption by appellees. On the same date, the Agency, apparently acting as intermediary for the foster parents of the two younger children, filed competing petitions for adoption of those two children. The trial court consolidated the petitions, set a hearing date of January 28, 2004, and appointed a guardian *ad litem* to represent the children. On January 21, 2004, one week prior to the scheduled hearing, the Agency filed a motion to dismiss appellees' petitions for adoption and a motion requesting de-consolidation of the various adoption petitions. If granted, the latter motion would prevent appellees from participating at all in the foster parents' adoption proceedings. The motion to dismiss noted, *inter alia*, that the Agency had "expressly consented" to the adoption of the two younger children by their respective foster families, while the Agency did not consent to the adoption of any of the three children by appellees. For the proposition that such selective (*i.e.*, petition-specific) Agency consent was required before appellees could petition for adoption, the Agency cited Section 2711(a)(5) of the Adoption Act, which provides as follows:

(a) **General rule.**—Except as otherwise provided in this part, consent to an adoption shall be required of the following:

\* \* \* \*

(5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons

---

**2.** Although the record in this case is not entirely clear, it appears that appellees had played a caregiving role in the children's lives in the past. On May 17, 2001, the Agency removed the three children from the care of their mother and the father of J.E.F. and N.G.F. Thereafter, appellees allege, and appellant does not dispute, appellees were granted visitation with the three children by the Juvenile Division of the Court of Common Pleas of Washington County, thereby awarding appellees partial custody of the children. Subsequently, the children stayed in appellees' home for extended periods during the summer until they were placed in foster care. *See* Relative Home Study for ICPC Placement dated April 15, 2002. Appellees' relationship with the children resulted in a pre-adoptive home study evaluation, conducted by the Washington County, Maryland, Department of Social Services in response to an interstate compact request from appellant. *Id.*

having custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

Following briefing and oral argument, the trial court entered an order on April 6, 2004, dismissing appellees' petitions to adopt, finding that they had failed to obtain the "requisite consent" to adopt required by Section 2711(a)(5) and therefore "lacked standing to proceed" under the Act. The court dismissed appellant's motion to de-consolidate as moot.

After appellees appealed, the trial court filed an opinion in support of its order on May 13, 2004. The court found that, because Section 2711(a)(5) employs the mandatory language "shall," it "shows a clear requirement of consent of the person or persons having custody of the adoptee." The court also cited to points made in the Opinion in Support of Affirmance ("OISA") in *Chester County Children and Youth Services v. Cunningham*, 540 Pa. 258, 656 A.2d 1346 (1995) (a case involving whether foster parents have standing to adopt absent the custodial agency's consent), without recognizing that the opinion did not represent a majority view of that evenly-divided Court.[3] Based upon the *Cunningham* OISA and its construction of the language of the statute, the trial court understood the law to be that, in the case of anyone besides grandparents, "the Agency's consent is absolutely required." Trial court slip op. at 4–5. The trial court also rejected appellees' reliance upon this Court's grandparent intervention decision in *Hess*, 530 Pa. 218, 608 A.2d 10, finding *Hess* distinguishable because *Cunningham* (again, in actuality, the *Cunningham* OISA) supposedly limited the application of *Hess* to grandparents: "For this reason, this Court cannot extend *Hess* to apply to other blood relatives." Trial court slip op. at 5. Thus, the trial court seemed to believe that it simply lacked the authority to entertain appellees' adoption

3. *Cunningham* was decided by *per curiam* order, noting that the court being evenly divided, the order below was affirmed. The *per curiam* order was accompanied by an OISA, representing the views of three Justices, and an Opinion in Support of Reversal ("OISR"), representing the views of the remaining three participating Justices. Justice Papadakos did not participate in the decision.

petitions or to allow them to participate in the proceedings involving the foster parents' petitions.

Although the trial court's order had stated only that appellees lacking standing because they failed to obtain the Agency's consent to adopt, the court's subsequent opinion went on, in the alternative, to explain why it believed that the Agency did not unreasonably withhold consent. The court suggested that agency consent to appellees' petitions in this case was "required pursuant to the best interests of the children." The court opined that the Agency knew the children, their history, their needs, and what was best for them in terms of their long-care placement. Rejecting the concerns of the guardian *ad litem,* who had suggested that the views of all persons expressing an interest in the children should be considered and that the three children should be preserved in a family unit, the court noted that the children had not lived as a family unit for more than two years, the two younger children had settled into their foster homes, and each set of foster parents wished to adopt their respective foster child. The court concluded that it was compelled to deny appellees standing to participate in any of the adoption proceedings, and the denial of standing could not be overcome absent "proper consent under the Adoption Act." Trial court slip op. at 5–8.

On appellees' appeal, a Superior Court panel reversed in a unanimous, published opinion authored by the Honorable John Bender. *In re Adoption of J.E.F.,* 864 A.2d 1207 (Pa.Super.2004). The panel began by noting that, while Section 2711(a)(5) generally requires consent of the persons or entities it encompasses, Section 2713 vests discretion in the trial court to dispense with consents other than those of the adoptee in certain circumstances, including the circumstance at issue here:

The court, in its discretion, may dispense with consents other than that of the adoptee to a petition for adoption when:

(1) the adoptee is over 18 years of age; or

**(2) the adoptee is under 18 years of age and has no parent living whose consent is required.**

23 Pa.C.S. § 2713 (emphasis supplied).[4] The panel found that the award of custody of the three children to the Agency following the termination of parental rights effectively made the Agency the children's legal guardian for purposes of Section 2711(a)(5), and thus the consent requirement applied to the Agency. The panel then discussed this Court's holding in Hess and the decision in In re Adoption of A.M.T., 803 A.2d 203 (Pa.Super.2002), where the Superior Court had permitted the paternal aunt and uncle of children whose parents had died as the result of a murder-suicide to petition for adoption notwithstanding the absence of consent from the children's guardian, a maternal aunt. From these decisions, the panel derived an overarching proposition that interested prospective adoptive parents who have a familial relationship with the adoptee(s) should be permitted to participate in adoption proceedings so that the best interests of the children could be fully explored before the court. 864 A.2d at 1210–12.

In short, the panel viewed the Act as both establishing a general requirement of consent from the guardian or custodian of a child in order to adopt, but also affording the trial court the discretionary authority to dispense with such consents, and particularly where the putative adopting party has a familial relationship with the child or children. Further, the panel rejected the Agency's argument, which was founded upon the dissenting opinion in Hess, that the termination of the parental rights of the mother and father automatically and necessarily terminated any legal interest that other family members may have had regarding the children. In the panel's view, appellees remained the aunt and uncle of the children despite the termination of parental rights. Having determined that the lower court erred in denying appellees standing, the panel did not pass upon appellees' alternative argument that the Agency's refusal to consent to the proposed adoptions here was unreasonable. Finally, the panel found

4. Pursuant to Section 2711(a)(1), an adoptee over the age of 12 must consent to an adoption.

that the separate adoption petitions should be heard together, thereby ensuring that all relevant evidence concerning the best interests of the children could be heard. The panel remanded to the trial court for further proceedings consistent with its opinion. 864 A.2d at 1212–14.

This Court granted allocatur to address whether appellees had standing to petition to adopt the minor children without the consent of appellant under Section 2711(a)(5), the potential effect of *Hess* in this situation and, ultimately, the propriety of the Superior Court's construction of the statute and this Court's precedent. *See In re Adoption of J.E.F.*, 583 Pa. 512, 880 A.2d 504 (2005). Because the questions are interrelated, we shall consider them together; and because the questions, as posed, are purely questions of law, our review is plenary. To the extent that resolution of this appeal involves application of the Adoption Act, the Court's task is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). Generally speaking, the best indication of legislative intent is the plain language of the statute. *See, e.g., Commonwealth v. Gilmour Manufacturing Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003); *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words.").

Appellant Agency argues that Section 2711(a)(5) unequivocally provides that the consent of a custodial agency is required for an adoption, and that the General Assembly did not provide any exception to this requirement. According to appellant, absent consent or a waiver of consent, appellees have no statutory standing to file an adoption petition or to participate in adoption proceedings brought by other prospective adoptive parents. Appellant further argues that standing is a preliminary, jurisdictional question, resolvable as a matter of law. Like the trial court, appellant supports its statutory construction argument, in part, by citing as if it were controlling the OISA in *Cunningham*, without recognizing that the

opinion lacks precedential value, and without discussing the competing views of the three Justices who comprised the OISR in that case. Brief for Appellant, 13.[5]

Echoing traditional notions of standing, appellant also argues that, without its consent to pursue adoption, appellees have no substantial, direct and immediate interest in any adoption proceedings involving the children. This is so, appellant maintains, because appellees are merely the aunt and uncle of children whose parents' rights have been terminated and who have been placed in the custody of appellant, a public agency, thus rendering appellees disinterested third parties. Indeed, appellant goes so far as to declare that: "The laws of adoption are clear. Once parental rights are terminated, the familial ties to the whole family are severed." Brief of Appellant, 14. In support of this "clear law," appellant cites to the dissenting opinion in *Hess*. Under appellant's reading of the Act and the case authority, when it serves as a legal custodian or guardian of children, it essentially has the unilateral power (via its unchecked power to withhold consent) to veto an adoption petition of which it does not approve, and it thereby has the power to control who may participate in an adoption proceeding.

Appellant supports its bright-line view of its control over standing in a case such as this by noting that adoption is a purely statutory construct that did not exist at common law and that with the Adoption Act, the General Assembly established the sole legal means by which adoption may be accomplished. Appellant notes that in this case, upon termination of parental rights, the Orphans' Court directed that the children remain in appellant's custody pending finalization of adoption. Appellant further notes that the authority of a custodial agency following termination of parental rights is also governed by the Act:

Effect of decree of termination

\* \* \* \*

---

**5.** In a related error, appellant refers to the OISR in *Cunningham* as a dissent. Brief for Appellant, 17.

(c) Authority of agency or person receiving custody.—An agency or person receiving custody of a child shall stand in loco parentis to the child and in such capacity shall have the authority, inter alia, to consent to marriage, to enlistment in the armed forces and to major medical, psychiatric and surgical treatment and to exercise such authority concerning the child as a natural parent could exercise.

23 Pa.C.S. § 2521(c). Appellant claims that this provision clearly evidences a legislative intent to entrust custodial agencies with broad authority to act on behalf of the children committed to its custody. Reading Section 2521 in conjunction with the consent language in Section 2711, appellant then urges this Court to find that its consent to adopt is "required" before appellees can be deemed to have standing to petition to adopt.

Appellant also distinguishes *Hess,* a decision which it erroneously characterizes on multiple occasions as a "plurality." Brief for Appellant, 7, 18, 21, 27. In fact, *Hess* was a 4–3 majority decision of this Court entitled to full precedential weight, which certainly was binding on the lower courts to the extent it was relevant. In any event, appellant posits that *Hess* sets forth a very limited exception to its consent/veto power: allowing grandparents to intervene in adoption proceedings involving their grandchildren. Appellant notes that *Hess* does not speak directly to standing, but only to intervention, a right which grandparents are granted by statute pursuant to the Children and Minors Act, 23 Pa.C.S. § 5301 *et seq.* Again invoking the non-precedential OISA in *Cunningham* without accounting for its limited value as precedent, appellant also claims that *Hess* must be understood as being powered by the "unique status" accorded grandparents under the law. Given these circumstances, appellant argues, *Hess* should not be "extended" to recognize standing in non-grandparents to seek adoption.

In the alternative, appellant argues that *Hess* is "inherent[ly] flaw[ed]," that it "thwarts" the mandate of the Adoption Act, and that it represents "judicial overstepping" which has "spawned countless litigation" as other individuals "seek

to skirt the clear legislative requirements of the Adoption Act." Appellant requests that this Court "right the wrong created by the plurality decision in *Hess* " by overruling it and its Superior Court progeny—in particular, the *A.M.T.* decision, which was relied upon by the panel below. Brief for Appellant, 21, 24–27. Appellant concludes this point by declaring that these cases in its estimation represent the "folly created when our courts decide to legislate from the bench." *Id.* at 27.[6]

Finally, notwithstanding what appears to be its absolutist position concerning its Section 2711(a)(5) power to bestow or withhold consent to adopt, appellant concedes that Section 2713(2) vests discretion in the trial court to dispense with such consents. Appellant states, without citation to any authority, that in deciding whether to dispense with the custodial agency's consent, the trial court should simply determine whether the agency unreasonably withheld consent. This construct, of course, would allow the custodial agency to maintain a gatekeeping role nonetheless. Appellant then stresses that, in its Pa.R.A.P.1925 opinion, the trial court "found" that appellant did not unreasonably withhold its consent; instead, it considered the best interests of the children. Brief for Appellant,

---

**6.** Since appellant erroneously elevates the *Cunningham* OISA to the status of precedent, misapprehends the actual majority status of the decision in *Hess,* and cites the *Hess* dissent as the source for "the laws of adoption," it is worth noting that the three dissenting Justices in *Hess* were the same Justices in the affirmance position in *Cunningham.* The views appellant prefers have never been embraced by a majority of this Court. a party is free, of course, to question precedent, and to argue that prior minority or non-controlling views have the better of it. But one's preference for those views does not convert them into majority or controlling status. Whatever value minority views have is a matter of jurisprudential persuasion, and not of precedential effect.

Not to belabor the point, but in a case where a party takes the extraordinary step of requesting that multiple cases be overruled (or disapproved, which in fact is the appropriate request as to unrelated lower court authority), and is so reckless as to baldly characterize decisions with which it disagrees as "judicial legislation," counsel should strive for greater precision in ascertaining and accounting for the actual precedential value of the authority under discussion, as well as the authority it claims supports its contrary view. Precision in presentation, rather than sloganeering, is a more effective form of advocacy.

22–23, citing trial court slip op. at 5–6. In conclusion, appellant states that, absent its consent, or the waiver of consent by the trial court, appellees lack standing either to pursue adoption or to participate in the adoption proceedings brought by the foster parents.

In response, appellees agree that adoption is governed by the Adoption Act, but they dispute appellant's view of what the Act requires in order for a party to pursue an adoption. Appellees note that Section 2312 of the Act (entitled, "who may adopt") makes plain in very broad terms that "[a]ny individual may become an adopting parent." Appellees also note that the 1970 Adoption Act had explicitly required the consent of the custodial agency for an adoption to proceed, but that this express requirement was not carried forward into Section 2711 of the 1980 Adoption Act.[7] In light of the elimination of the explicit agency consent requirement, appellees claim that the statutory construct alone makes clear that the absence of agency consent does not preclude them from participating in the adoption proceedings.

Appellees then argue that, under the plain language of Section 2711(a)(5), the agency has no power of consent unless it is "the guardian of the person," a formal status appellant does not have. Appellees argue that a guardian is distinct from an entity merely having physical custody of a child. They note that custody is granted by order of the Family Division of the Court of Common Pleas or, in limited circumstances, by order of the Juvenile Division or the Orphans' Court. In the Family Division, appellees note, only three types of individuals can be granted custody: parents pursuant

---

7. Section 411 of the 1970 Adoption Act, entitled "Consents Necessary to Adoption," listed those parties from whom consent was required:

Except as otherwise provided in this act, consent to an adoption shall be required of the following:

\* \* \* \*

(4) The agency to which custody of the child has been awarded under Article III;

(5) The guardian of the person of an adoptee under the age of eighteen years, if any there be, or of the person or persons having custody of such adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

to 23 Pa.C.S. §§ 5301 and 5303, grandparents pursuant to 23 Pa.C.S. §§ 5311–13, and parties standing in *loco parentis* to a child pursuant to decisional law.[8] In the Juvenile Division, on the other hand, a child welfare agency may be awarded custody after a child is removed from his parents' home and adjudicated dependent. 42 Pa.C.S. §§ 6324 and 6351. The Orphans' Court can also award custody to an agency after parental rights are terminated and before a child is adopted, as occurred in the case *sub judice.* 23 Pa.C.S. § 2521(b).

By contrast, appellees argue, guardianship status may only be acquired by way of a specific decree from the Orphans' Court. Orphans' Court procedures are governed by statute and the Orphans' Court rules, with different procedures governing guardianship in different circumstances. *See* 20 Pa. C.S. §§ 5112–13 and Pa.O.C.R. 12.5 (guardianship of a minor child); 20 Pa.C.S. §§ 5511–12 and Pa.O.C.R. 14.1 (guardianship of an incapacitated person); 23 Pa.C.S. § 2313(a), 42 Pa.C.S. § 6311 and Pa.O.C.R. 12.4 (guardian *ad litem*). In appellees' view, the fact that Section 2711(a)(5) requires consent of the "guardian of the person" of the adoptee is significant because the law distinguishes between "guardians of the person" and "guardians of the estate," with each occupying a distinct "sphere of authority." Appellees note that a guardian of the person is responsible for the physical care of a minor (or other incapacitated person), while a guardian of the estate would be responsible for the subject's property. Appellant was never made guardian of the person of any of the children; instead, it merely was awarded custody as an incident of the termination of parental rights. Therefore, appellees argue, appellant is not the childrens' guardian for purposes of Section 2711(a)(5) consent.

Appellees also argue that a plain language reading of the entirety of Section 2711(a), which sets forth the various persons whose consent to an adoption may be required, makes clear that an agency's custodial status is not enough to vest it with the power of consent. Appellees stress that each subpart of Section 2711(a) involves a distinct, common factual scenario

8. *See, e.g., T.B. v. L.R.M.,* 567 Pa. 222, 786 A.2d 913 (2001).

where a specific person's consent is required, *i.e.*, the adoptee, if over 12 years of age at (a)(1); the spouse of the adopting parent at (a)(2); the parent(s) of an adoptee under age 18 at (a)(3); the guardian of an incapacitated adoptee at (a)(4); and subsection (a)(5), at issue here. Appellees argue that (a)(5), like the previous subsections, is designed to capture a specific scenario—instances where there is a court-appointed guardian of the person. Consent under that subsection is required of, "[t]he guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required." Appellees claim that the language "the guardian of the person" is grammatically linked both with "of the adoptee" and "of the person or persons having custody of the adoptee." Thus, appellees read this provision as providing that consent is required of the court-appointed guardian of the person of the minor adoptee, where one exists; and/or of the court-appointed guardian of the person of an incapacitated adult who has custody of the minor adoptee, where one exists. Appellees note that incapacitated persons have children, too, and those incapacitated persons may also have guardians. This subsection, appellees reason, is intended to address, and plainly addresses, that distinct scenario. Because appellant was neither appointed guardian of the person of the adoptees here, nor guardian of the person who had custody of the adoptees, appellees contend, appellant's consent to adopt was not statutorily implicated.

Finally, appellees argue that, even if appellant's consent were generally required, the Adoption Act authorizes the court to dispense with that requirement pursuant to Section 2713(2). Appellees contend that the Superior Court properly dispensed with the consent requirement in this case in accordance with Section 2713(2), *Hess* and *A.M.T.* In *Hess,* this Court held that agency consent was not required where the grandparents of the children sought to intervene in an adoption proceeding. In *A.M.T.*, the Superior Court similarly dispensed with the consent requirement where a paternal aunt

and uncle seeking to adopt the children had failed to secure consent from the guardian (the children's maternal aunt). According to appellees, the Superior Court here properly found that the holdings in those cases recognize that Section 2713(2) authorizes the trial court to dispense with agency consent where the party seeking to participate in adoption proceedings has a familial relationship with the children. In the alternative, appellees argue that the trial court, at a minimum, should have held an evidentiary hearing to determine whether to dispense with the Agency's consent to appellees' proposed adoption of the children.

This Court also has the benefit of a brief from the childrens' guardian *ad litem*, which urges affirmance of the Superior Court. The guardian *ad litem* emphasizes Section 2713(2)'s authorization for the trial court to dispense with the consents contemplated by Section 2711. The guardian *ad litem* argues that the Superior Court determination was thorough; it was consistent with the plain language of Section 2713(2); it was consistent with this Court's reasoning in *Hess*; it was consistent with other relevant authority respecting the standing of other extended family members; and, "most importantly," it was consistent with what was in the best interests of these children.

For purposes of decision, we will assume that appellant is correct that it qualifies as an entity whose consent is contemplated by Section 2711(a)(5) because of its custodial authority over the children. But, the difficulty with appellant's claim, that its failure to consent alone operates to eviscerate the very standing of a party that would seek to adopt, is that this provision, by its plain language, never purports to speak to standing, much less does the provision suggest that the consequence of withholding consent is to eliminate standing. That the Act does not contemplate delegation to custodial agencies of gatekeeping authority over adoption petitions is plainly demonstrated by Section 2713(2), which authorizes the trial court to dispense with consents "in its discretion." [9] That

9. It bears noting that Section 2711(a)'s consent provision begins with the caveat, "[e]xcept as otherwise provided in this part," and thus it contemplates the exception recognized in Section 2713(2).

conferral of broad discretionary authority upon the trial court comes with no strings attached in a case, such as this one, where the adoptee's consent is not at issue, and the adoptee is under 18 and has no living parent from whom consent is required. And, of necessity, the Act leaves it to the court to decide the relevance and importance of a conferred, or a withheld, consent from a relevant party.

We read these provisions, which must be construed together, as making clear that the trial court, and not the Agency or any other person or entity with a power of consent (save the adoptee), is to determine what role a conferred, or withheld, consent should have upon the adoption proceedings. *See Hess,* 608 A.2d at 14 ("the Act makes clear that the court has the final burden of determining whose consent is necessary;" notion that the opinion of the custodial agency "will somehow control the outcome of the adoption is therefore baseless") (citing Section 2713(2)). This statutory construct makes sense since it is the court, and not an agency or any other entity, which has the ultimate responsibility to determine what will be in the best interests of the adoptees. "At all stages of the proceedings, the best interest of the child is the paramount consideration." *Hess,* 608 A.2d at 13, *citing* 23 Pa.C.S. § 2902(a). *See also Hess,* 608 A.2d at 14 ("the Act clearly focuses on the needs of the child, reflecting the policies expressed at common law;" "[t]he agency's wishes, therefore, are to be considered in light of that objective.") The Act decidedly does not award the very keys of the courthouse door to the custodial agency.

Moreover, the fact that the Act contemplates that the court is to determine the effect of a custodial agency's withholding of consent does not mean, for example, that a court's finding that consents are indeed necessary for the petitioner to prevail in a particular case operates to deny "standing" to the petitioning party. It is difficult to conceive of the trial court making a reasoned decision concerning whether to dispense with the consents without engaging in a substantive best interests analysis. That substantive analysis does not occur at (to use appellant's description) the "preliminary" standing

stage. The more logical approach, and the one we conclude is authorized by the Act, is to recognize that the question of the effect of withheld consents is for the court, in its discretion, as part of an overall substantive evaluation of whether it is in the best interests of the child to permit a party to proceed with a petition for adoption.

The fact that the consent provision does not erect the formalized standing hurdle that appellant claims it creates, of course, does not mean that jurisprudential principles of standing play no role in the adoption arena. At its most basic level, standing merely "denotes the existence of a legal interest." *Commonwealth v. Peterson*, 535 Pa. 492, 636 A.2d 615, 617–18 (1993). Traditionally, to have standing, a party must be aggrieved—that is, the party must have a substantial interest in the subject matter of the litigation that must be direct and immediate, rather than remote, and which distinguishes his interest from the common interest of other citizens.

With respect to this requirement of being aggrieved, an individual can demonstrate that he is aggrieved if he can establish that he has a substantial, direct, and immediate interest in the outcome of the litigation in order to be deemed to have standing. *In re Hickson*, [573 Pa. 127] 821 A.2d [1238,] 1243 [(Pa.2003)]; *City of Philadelphia [v. Commonwealth of Pennsylvania]*, [575 Pa. 542] 838 A.2d [566,] 577 [(Pa.2003)]. An interest is "substantial" if it is an interest in the resolution of the challenge which "surpasses the common interest of all citizens in procuring obedience to the law." *In re Hickson*, 821 A.2d at 1243. Likewise, a "direct" interest mandates a showing that the matter complained of "caused harm to the party's interest," *id.*, i.e., a causal connection between the harm and the violation of law. *City of Philadelphia*, 838 A.2d at 577. Finally, an interest is "immediate" if the causal connection is not remote or speculative. *Id.; see Kuropatwa v. State Farm Ins. Co.*, 554 Pa. 456, 721 A.2d 1067, 1069 (1998).

*Pittsburgh Palisades Park v. Commonwealth of Pennsylvania*, 585 Pa. 196, 888 A.2d 655, 660 (2005). We do not doubt

that traditional standing principles would warrant a denial of standing to a party in an adoption matter, no less than in other cases, where such an interest was lacking.[10]

■ In this case, of course, appellant has offered that the practical effect of its denial of consent, combined with the termination of parental rights in the children, operates to extinguish any substantial, direct and immediate interest appellees may have had in adopting their niece and two nephews. We disagree. With respect to the agency's withholding consent, once again, the statute does not treat that fact as determinative, leaving the effect to the trial court. *Accord Cunningham*, 656 A.2d at 1352–53 (Opinion in Support of Reversal per Montemuro, J.) (if it were "completely out of the question for [the petitioning parties] to adopt without the agreement of the agency, they obviously could have no actual interest in the outcome of the proceedings. This is not the case under the Act" given Section 2713(2)). Thus, we conclude that a withheld consent alone does not destroy a party's standing under traditional standing doctrine.

■ With respect to the effect of the termination of parental rights, appellant's argument is premised exclusively upon the *Hess* dissenting opinion's broad proposition that once "parental rights have been terminated but an adoption has not yet occurred, the termination of parental rights logically serves as the point in the adoption proceeding at which all ties with the child's natural family are ended. Once those ties have been severed, there is no basis for intervention by the natural family." 608 A.2d at 16 (Flaherty, J., dissenting).

10. There are specific instances in the law, and particularly in family law, where considerations peculiar to the nature of the litigation warrant a more stringent test for standing. *See T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913, 916 (2001) ("It is well-established that there is a stringent test for standing in third-party suits for visitation or partial custody due to the respect for the traditionally strong right of parents to raise their children as they see fit.... The courts generally find standing in third-party visitation and custody cases only where the legislature specifically authorizes the cause of action.") (footnote and citations omitted). There is no suggestion that a more stringent test for standing should apply in adoption matters, based upon the inherent nature of the action; rather, appellant confines itself to interpretation of the Act and traditional notions of standing.

But, in addition to the fact that this proposition was not accepted by the *Hess* majority, it is important to note that the dissent's view would have represented a significant expansion of prior law and, for the reasons that follow, we are no more convinced of the dissent's leap in logic than was the *Hess* majority.

The authorities cited by the dissent all had to do with the effect of an actual decree of adoption, not the preliminary step of terminating parental rights. Thus, the dissent quoted *Harvey Adoption Case,* 375 Pa. 1, 99 A.2d 276, 277 (1953), for the proposition that, " 'a **decree of adoption** terminates forever all relations between the child and its natural parents, *severs it entirely from its own family tree* and engrafts it upon that of its new parentage.' " 608 A.2d at 16 (bold emphasis added; italics emphasis added by *Hess* dissent). The dissent further noted that, although this policy might seem harsh, it was sound because, *inter alia,* " 'the intention and result of the law is to **enfold an adopted child into its new family** so as to be indistinguishable from his new siblings in every possible respect.... [A]ll family relationships are thus reestablished within the adopting family and *all ties with the natural family are eradicated.*' " *Id.,* quoting *Faust v. Messinger,* 345 Pa.Super. 155, 497 A.2d 1351, 1353 (1985), *appeal dismissed,* 514 Pa. 286, 523 A.2d 741 (1987) (bold emphasis added; italics emphasis added by *Hess* dissent).

We recognize the salutary purpose served by treating a decree of adoption as severing all ties with the former family tree, so as to promote the new family bond. However, we respectfully do not agree that the logic of that rationale commands a finding that the same total severance should be deemed to have occurred earlier, when parental rights are terminated. When the child is in that indeterminate state prior to a decree of adoption, there is not yet a new family into which he can be enfolded. A child's aunt and uncle who indicate an interest in adopting the child at that stage are not a threat to the nurturing and maintenance of the new family bond; indeed, if their petition is heard and prevails, it is their family which will be the one to enfold the child. Moreover,

they may well be the most logical persons to adopt and, in many instances, the agency may be promoting their role as adoptive parents. More importantly, for purposes of the mere preliminary question of standing, a child's blood aunt and uncle who indicate an interest in adoption clearly have an interest which surpasses that of the ordinary, unrelated citizen. And, finally, nothing in the Adoption Act provides that the termination of parental rights acts to sever the child's relationship with all other relatives.[11] Thus, we reject appellant's argument that appellees lacked standing to participate in the adoption proceedings.

We find further support for our conclusion in Justice Montemuro's OISR in *Cunningham,* which, in the context of foster parent adoption, discussed the illogic in deeming a custodial agency's withholding of consent to control the question of standing:

[T]he Opinion in Support of Affirmance creates a rule which grants foster parents "standing" when the agency approves, yet refuses them "standing" when the agency disapproves. Under the general principles of standing, there is no logical reason to distinguish between the two situations on this basis. Admittedly, the concept of standing is an amorphous one. Usually, standing is a requirement that parties have sufficient interest or injury in a lawsuit to ensure that there is a legitimate controversy before the court. *See* 59 Am. Jur.2d § 30 *Parties* (1987). Here the Opinion in Support of Affirmance is not using the concept of standing in its generally accepted sense. Rather, it is being used as a policy tool to prevent foster parents from adopting their children absent the consent of the agency on a *per se* basis. In effect, foster parents' legal status, and thus their ability to appear before the court, is being determined not by the nature of their relationship to the controversy, but by another party *to* the controversy. As a matter of jurispru-

11. To the contrary, it is notable that, following termination of parental rights, the Adoption Act treats relatives with more deference than nonrelatives. Thus, Section 2531, which governs "reports of intention to adopt," expressly excuses certain relatives, including aunts and uncles, from the reporting requirement. 23 Pa.C.S. § 2531(c).

dence such a rule as the Opinion in Support of Affirmance sets forth is ill-conceived and contrary to the Act.

\* \* \*

Our law clearly places the responsibility with the court to make the final determination of what is in the best interests of the child. Nowhere does it grant family service agencies an unreviewable power to determine who can and cannot adopt a child in this Commonwealth.

*Cunningham*, 656 A.2d at 1353, 1354 (Opinion in Support of Reversal per Montemuro, J.). We agree that, under both the Act and traditional notions of standing, it is not the consent of the Agency that determines the preliminary question of standing to be heard under the Adoption Act, but the existence of a substantial, direct, and immediate interest in the proceeding.

We turn now to the question of whether the decision in *Hess*, which concerned intervention in an adoption proceeding, not standing, and involved grandparents, not an aunt and uncle, supports a finding that appellees have standing to pursue their adoption petition below. Since we have already determined that appellees have standing under traditional notions of that doctrine, and that the Act does not deprive them of that status, even if appellant could convince us that *Hess* should be deemed totally inapposite, it would not alter the outcome of this appeal. In any event, we find that *Hess* is consistent with our holding that appellees have standing.

As noted, appellant poses *Hess* as an example of judicial overstepping. We do not agree. First of all, although appellant may not like the result, *Hess* was bottomed in statutory analysis and, for purposes of this appeal, that statutory analysis is sound. One of the arguments forwarded by the custodial agency in *Hess* was that the grandparents' intervention was an exercise in futility because the agency had the power to refuse to consent to an adoption by the grandparents under Section 2711(a)(5), and it did not intend to confer that consent. The argument, thus, was similar to the argument appellant has forwarded here. The *Hess* Court soundly rejected the notion that the agency's consent would be dispositive of the

grandparents' prospects under the Act, noting, *inter alia,* that "it is clear from the Act that the court's concern is not the will of the agency but the best interests of the child" and "[t]he agency's wishes, therefore, are to be considered in light of that objective." *Hess,* 608 A.2d at 14. Moreover, the *Hess* Court emphasized, as we have above, that Section 2713(2) made clear that, in the exercise of its duty to determine what was in the child's best interests, "the court has the final burden of determining whose consent is necessary" and "[t]he agency's implicit assertion that its opinion will somehow control the outcome of the adoption is therefore baseless." *Id.*

In short, *Hess's* focus on the overarching role of the court in determining the best interests of the child in an adoption proceeding comports with our understanding of the operation of the Act, including the plain purpose and scope of Section 2713(2). We recognize that there is some broader *dicta* in *Hess* as well, to the effect that, "[a] child's interests are best served when all those who demonstrate an interest in his or her welfare are allowed to be heard." *Id.* at 15. Since the parties at issue in *Hess* were grandparents, this observation obviously was unnecessary to the decision, and we do not suggest that any and all persons who declare an interest in an adoption proceeding must be heard. Nor do we deny that a party's alleged "substantial, direct, and immediate interest" in an adoption may be affected by other restrictions arising under other provisions of the Adoption Act. *See, e.g.,* 23 Pa.C.S. § 2531(c).[12] We simply hold that a custodial agency's refusal to consent to an adoption does not, on its own, deprive a person who otherwise has a stake in the litigation standing to pursue that interest. Since we find that *Hess,* to the extent it is relevant to the standing question here, comports with the Act, we decline appellant's request to overrule the decision.

12. We are aware that appellants forward an argument premised upon Section 2531(c), which governs reports of intention to adopt, arguing that because appellees, though the children's aunt and uncle, were not in custodial or care status, they were not authorized to file a petition to adopt. This argument was not forwarded in the motion to dismiss below, it was certainly not the basis for the trial court's decision on standing and it was not encompassed within this Court's grant of review. Hence, we do not reach it.

Likewise, we decline to disapprove of the Superior Court's decision in *A.M.T.*, 803 A.2d 203, which applied *Hess*.[13]

In summary, nothing in the Act precludes any party from filing a petition for adoption, nor is there anything to preclude the trial court from entertaining multiple adoption petitions and then determining the best interests of the child. The party filing such a petition, however, must meet the requirements of Section 2701 entitled, "Contents of petition for adoption," including subsection (7), which requires that the petition include the requisite consents contemplated by Section 2711 or the "basis upon which such consents are not required." 23 Pa.C.S. § 2701(7). In a case where the party has not secured the Section 2711 consents, the party may request that the court dispense with the consent requirement under Section 2713 where the adoptee is over age 18 or where the "adoptee is under age eighteen and has no parent living whose consent is required." 23 Pa.C.S. § 2713. If such leave is sought, the trial court, with or without a hearing as it deems necessary, shall decide whether it serves the proposed adoptee(s) best interests to dispense with the agency's consent,

---

**13.** In *A.M.T.*, the children's father murdered their mother and then killed himself. A maternal aunt was declared guardian of the decedent's two younger children while the third child, who was fifteen, refused to consent to that guardianship. Thereafter, a maternal aunt and uncle and a paternal aunt and uncle filed separate, competing petitions to adopt. Not surprisingly, the guardian consented to the proposed adoption by the maternal aunt and uncle, but declined to consent to adoption by the paternal relatives. (The paternal aunt and uncle had, by then, been declared guardians of the older child.) Citing this Court's decision in *Hess*, the *A.M.T.* panel concluded that while the trial court had properly permitted the paternal aunt and uncle to intervene, it erred in failing to allow them " 'to participate in the proceeding just as any other individual or individuals who seek to adopt a child.' " 803 A.2d at 203, *quoting Hess*, 608 A.2d at 15. Citing the Superior Court panel decision in the *Hess* case, the *A.M.T.* panel reasoned that:

[A]s in *Hess*, the court in the present case "has preliminarily barred the presentation of potentially relevant evidence concerning the *BEST* interests of the children, and has thereby rendered it impossible for it to make a reasoned determination of the children's *BEST* interests on the basis of *ALL* of the possibly relevant evidence bearing on the ultimate and vital issue before it." *Hess*, [562 A.2d 1375, 1381 (Pa.Super.1989)].

*A.M.T.*, 803 A.2d at 209 (capitalization emphasis in original).

thereby permitting the petitioners to proceed with their petition for adoption. Although a custodial agency's consent to a party's proposed adoption is certainly relevant, and may even be deemed determinative by the court in conducting the best interests inquiry, otherwise necessary consents may be dispensed with by the court in its broad discretion. This statutory construct affords the trial court flexibility in determining what is best for the child, which is certainly a salutary consideration. We decline to interfere with the construct by imposing an artificial "standing" restriction which is not commanded by the Act. Instead, it is for the trial court, in the discretion afforded it under the Act, to determine whether it is in the best interests of the child to allow a party to proceed with the petition for adoption absent the statutory consents.

We turn now to appellant's alternative argument that the trial court, in its opinion, found that appellant did not unreasonably withhold consent to appellees' adoption petition, and thus the court's holding that appellees lacked standing should be affirmed on that ground. There are multiple flaws with this argument. First, the court's order, which is the subject of this appeal, did not address this alternative argument; instead, the order was confined to the *per se* notion that the absence of agency consent alone deprived appellees of standing and rendered the court powerless to entertain appellees' adoption petition. The discussion in the court's opinion does not alter the nature of the order.

Second, even in its opinion, the trial court still determined that the consequence of the custodial agency's failure to consent, if reasonable, was to deprive appellees of standing. As our analysis above has made clear, the Act does not contemplate that a failure to consent should have that effect.

Third, the alternative discussion in the trial court's opinion concerning the reasonableness of appellant's withholding consent was not offered as a construction of Section 2713(2), which the Court never discussed or cited, but instead was part of an attempt to distinguish *Hess.* The trial court's approach in this regard, which is the same approach appellant now forwards as the proper interpretation of Section 2713(2), would

examine the reasonableness of a custodial agency's determination to withhold consent and, if the determination is reasonable, treat it as conclusive on the question of standing. The approach thus preserves a preliminary gatekeeping function for the agency—less absolute, but gatekeeping nevertheless— which would restrict the information and options available to the court in the substantive adoption proceedings. This approach cannot be squared with the Act. Nothing in the plain language of Section 2713(2)'s conferral of broad discretionary power upon the court requires it to deem a custodial agency's "reasonable" refusal to consent to be conclusive of anything, much less the preliminary question of standing.

Our holding today is powered by the recognition that, under the Act, it remains the ultimate function of the courts, and not the social service agency, to determine what is in the best interests of children placed for adoption. The court should not cede that function, at a preliminary stage under the guise of "standing," to a custodial agency or other entity with a power to confer consent. As Justice Montemuro's OISR in *Cunningham* cogently noted:

> Our law clearly places the responsibility with the court to make the final determination of what is in the best interests of the child. Nowhere does it grant family service agencies an unreviewable power to determine who can and cannot adopt a child in this Commonwealth. . . . It can be anticipated that in most cases, the court would defer to the considerable expertise of the agency and affirm its decision to withhold consent. However, such a scheme would insure that the courts, not social service agencies, make the final decision as to whether adoption is in the best interests of the child in any given case. This is mandated by the plain language of the Act.

*Cunningham*, 656 A.2d at 1354 (Opinion in Support of Reversal per Montemuro, J.).

■■■ Finally, we stress that our determination that appellees have standing does not mean that they will, or should, be permitted to proceed with the petition for adoption and progress to a full merits consideration. *Accord Hess*, 608 A.2d at

15. We merely hold that the custodial agency's refusal to consent to their petition to adopt does not, by itself, operate to deprive appellees of standing to participate. We trust that the trial court will consider whether it is in the best interests of the children to dispense with the consent requirement of Section 2711 in this case and allow appellees to proceed with the petition for adoption, and then determine the placement that is in the best interests of the children after affording those individuals that the trial court has granted party status a full opportunity to present their respective testimony and experts.[14]

The order of the Superior Court is affirmed. Pursuant to that order, the case is remanded to the trial court for proceedings consistent with this Opinion. Jurisdiction is relinquished.

Chief Justice CAPPY, Justice NEWMAN and Justice SAYLOR, EAKIN and BAER join the opinion.

Justice BALDWIN files a concurring opinion.

Justice BALDWIN, concurring.

I concur with Justice Castille's result, but write separately to clarify my reasons regarding the finding that the consent of Washington County Children and Youth Agency ("Agency") is not required.

To effect an adoption, the legislative provisions of the Adoption Act must be strictly complied with and therefore my

14. The final issue this Court agreed to review is the whether the adoption proceedings should be consolidated. The trial court did not pass upon the issue given its holding on the preliminary issue of standing. The Superior Court held that the hearings on the separate adoption petitions should be heard together to allow the trial court to hear all of the evidence relevant to a determination of the best interests of the children in a single proceeding. While we agree that a single proceeding may be the most expeditious manner of resolving competing adoption petitions, we leave it to the trial court in the first instance to determine whether to consolidate petitions or hear them separately. We can envision scenarios where, for a myriad of reasons, including privacy issues affecting the children or the prospective adoptive parents, a trial court may find it necessary to conduct separate proceedings. Therefore, we will not establish a bright-line rule regarding consolidation, but rather leave that decision to the trial courts.

analysis focuses entirely on the relevant statutory provisions. *In re Adoption of R.B.F.,* 569 Pa. 269, 276, 803 A.2d 1195, 1199 (2002). Section 2711(a)(5) of the Adoption Act requires a potential adoptive parent to obtain the consent of:

> The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

23 Pa.C.S. § 2711(a)(5).

The language of section 2711(a)(5) may be susceptible to more than one interpretation. However, under no interpretation does section 2711 require that the consent of the Agency be obtained.

Appellees, the aunt and uncle of the three minor children, argue that section 2711(a)(5) should be interpreted to grammatically link the phrase "the guardian of the person" with both "of the adoptee" and "of the person or persons having custody of the adoptee." Therefore, Appellees read the provision as requiring consent of (1) the guardian of the person of an adoptee under the age of 18 years; or (2) the guardian of the person or persons having custody of the adoptee under 18 years of age. For example, if the child is in the custody of an incapacitated person or a minor, then the consent of the "guardian of the person" of that incapacitated person or minor is required. The statute specifically refers to *persons* and not to *agencies* in its requirements.

Alternatively, section 2711(a)(5) may be read to require the consent of (1) the "guardian of the person" of an adoptee under the age of 18 years; or (2) the person or persons having the custody of the adoptee.

Under either interpretation, Agency consent is not required. At no time was the Agency adjudged "guardian of the person" of the adoptees.[1] Nor were the adoptees in the custody of an

---

1. *See* 20 Pa.C.S. § 5111 *et. seq.* (appointment of guardians of the estate or of the person of a minor) and Pa.O.C.R. 12.5 (petitioning for the appointment of a guardian for the estate or person of a minor).

incapacitated person or a minor. Finally, the Agency is not a "person having custody of the adoptee." Section 2711 does not require consent of the "person or agency" having custody, but only of the "person" having custody. The Adoption Act repeatedly makes a distinction between the terms "person" and "agency" and the two words are not interchangeable.[2] Therefore, following the language of 23 Pa.C.S § 2711(a)(5), the consent of the Agency is not required for the Appellees to petition for adoption.

---

2. *See e.g.* 23 Pa.C.S. § 2102 (" 'Intermediary.' Any **person or persons or agency** acting between the parent or parents and the proposed adoptive parent or parents in arranging an adoption placement") (emphasis added); 23 Pa.C.S. § 2521(b) ("Award of custody.—The decree [terminating parental rights] shall award custody of the child to the **agency or the person** consenting to accept custody ...") (emphasis added); 23 Pa.C.S. § 2521(c) ("Authority of **agency or person** receiving custody.—An **agency or person** receiving custody of a child shall stand in loco parentis to the child ...") (emphasis added); 23 Pa.C.S. § 2530(b) ("Preplacement report.—A preplacement report shall be prepared by the **agency or person** conducting the home study ...") (emphasis added).