J-A30001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.H.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1664 EDA 2025 |

Appeal from the Order Entered July 2, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-00000923-2015

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.: FILED JANUARY 13, 2026

T.H.G. appeals, *pro se*, from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing, without prejudice, her petition to adopt T.A.H. (Child) (born July 2015). After careful review, we quash.

Two days after Child's birth, the Philadelphia Department of Human Services (DHS) obtained an order of protective custody for Child and placed Child with T.H.G., Child's mother's maternal cousin. Child's mother and Child had tested positive for marijuana. On August 19, 2015, Child was adjudicated dependent. Subsequently, Child's biological parents voluntarily relinquished their parental rights to Child; the court entered decrees terminating their parental rights in March 2016.

On February 6, 2017, Child was removed from T.H.G.'s home due to safety concerns. T.H.G. was granted supervised visitation with Child at DHS twice a week. On July 18, 2017, Child was placed back in T.H.G.'s care. On

December 22, 2017, Child was again removed from T.H.G.'s care, this time with the assistance of the police, and placed into foster care.[1]  At a status review hearing, held on March 22, 2018, the dependency court heard testimony from case managers and permanency workers and determined that Child should not be returned to T.H.G.'s care and that T.H.G. had no standing under the dependency petition.  **Id.** at *5.  Immediately following that decision, T.H.G. filed a petition to adopt Child.  **See** Petition For Adoption, 3/22/18.  Aaron Mixon, Esquire, was appointed to represent T.H.G. in the matter.  Subsequently, maternal grandmother, C.S., was granted temporary physical custody of Child.

T.H.G. filed an appeal from the dependency court's order removing Child from her care.  This Court reversed that determination, concluding that because T.H.G. had been declared a pre-adoptive resource prior to DHS' decision to remove Child from her care, the dependency court erred by failing to grant T.H.G. standing to challenge DHS's removal decision.  **See In re T.H.**, **supra** at *10.  Our Court remanded the matter with instructions to hold additional dependency proceedings and to permit T.H.G. to participate fully in those proceedings with counsel.  **Id.** at *11-*12.

_____

[1] At this visit, like the prior home visits, the Community Umbrella Agency (CUA) observed minimal to no food in T.H.G.'s kitchen cupboards, Child had minimal clothing, and Child was sleeping on a small cot with a mattress and no other furniture in her bedroom.  **See In re T.H.**, 1191 EDA 2018, *4-*5 (Pa. Super. 2018) (unpublished memorandum decision), citing Trial Court Opinion, 6/29/18, at 1-3.

Following a permanency review hearing, on January 15, 2019, the dependency court entered an order granting C.S. unsubsidized permanent legal custodianship (PLC) of Child, which effectively terminated court supervision, discontinued DHS' services, and discharged the dependency petition. **See In the Interest of T.A.H.**, 221 A.3d 326, *8 (Pa. Super. 2019) (unpublished memorandum decision). On the same day, the adoption court held a hearing on T.H.G's outstanding adoption petition and ultimately denied the petition as moot where the respondent, D.H.S., no longer had custody of Child and after the dependency petition had been dismissed. **Id.** at * 9.

T.H.G. filed two notices of appeal contesting the orders of the dependency court and the adoption court. This Court vacated both orders concluding that: (1) the dependency court failed to follow our Court's prior instructions to hold further proceedings *with T.H.G.'s full participation* to determine whether Child had been properly removed from her care; and (2) without a proper determination of whether Child should have been removed from T.H.G., neither the granting of PLC to C.S. nor the dismissal of T.H.G.'s adoption petition as moot could stand. **See id.** at *21-*22. On remand, we directed the dependency court to hold a new hearing, with instructions. **See id.** at *21.

On September 24, 2019, the dependency court entered an order re-adjudicating Child dependent, vacating C.S.'s PLC, transferring legal custody to DHS, and granting C.S. temporary physical custody of Child. Following two evidentiary hearings held in January and August 2020, the court found that

- 3 -

adoption remained the current placement goal for Child and that temporary physical and legal custody should remain with C.S. The court also found that DHS had properly removed Child from T.H.G.'s care and that the subsequent placement of Child with C.S. was in Child's best interests. The dependency court referred T.H.G.'s adoption petition to the adoption court; the court again declared the adoption petition moot because DHS no longer had custody of Child where the court properly granted C.S. PLC. *Id.*, 253 A.3d 319, *10 (Pa. Super. 2021) (unpublished memorandum decision). *See* Order, 10/13/20 (trial court order listing "the matter in the Adoption Review Court to determine how the adoption shall proceed [s]ince the removal issue [has been] decided [and T.H.G.] is no longer a pre[-]adoptive parent").

On appeal, our Court affirmed the dependency court's findings of fact and credibility determinations in support of its decision to uphold Child's removal from T.H.G.'s care where her "home was not appropriate for Child and [] removal from that home was[,] therefore[,] best suited for [Child's] protection and welfare." *Id.* at *18. However, our Court concluded that the adoption court incorrectly dismissed T.H.G.'s adoption petition as moot where the record was unclear as to whom or what agency had legal custody of Child and whether the dependency petition had properly been discharged. On remand, the Court instructed the dependency court to "determine if an order discharging the dependency petition and granting unsubsidized [PLC] to [C.S.] is still in the best interests of Child and, if so[,] then the court shall enter an order to that effect." *Id.* at *23, citing 42 Pa.C.S.A. § 6351(g). The Court

further stated that if, on remand, such an order is entered, then the court may dismiss the adoption petition as moot. *Id.*, 253 A.3d at *23-*24.[2]

On February 4, 2021, PLC was awarded to C.S. by the Honorable Allen L. Tereshko, Sr. The PLC order notes that "said custody shall remain in effect until further [o]rder of the [c]ourt or until the child attains the age of majority, not to exceed the age of 21." PLC Order, 2/4/21. In that same order, DHS' dependency petition was discharged. *See id.* On July 7, 2021, the trial court found that granting C.S. permanent legal custodianship was still in Child's best interest, *see* Order, 7/16/21, at 2, and, accordingly, ordered that T.H.G.'s adoption petition be dismissed as moot. *Id.*

On April 25, 2024, T.H.G. filed another petition to adopt Child. In that petition, T.H.G. represented that Child "resides with [her,] the legal guardian . . . [that T.H.G. is the] only mother figure that she has known and that she has] raised [C]hild since birth in this family planned adoption arrangement." Petition for Adoption, 4/25/24, at ¶¶ 14, 16-17.

On December 11, 2024, the trial court held a hearing where T.H.G. testified that she no longer wanted Attorney Mixon to represent her, but wished to proceed *pro se* with her adoption petition. *See* N.T. Hearing, 12/11/24, at 16. Following a colloquy, *id.* at 16-17, the court granted T.H.G.'s request to proceed *pro se* and vacated Attorney Mixon's appointment as

---

[2] Our Court also stated that if the adoption court dismissed the petition as moot, then "T.H.[G.] will have to file an adoption petition against [C.S.] as Child's legal custodian." *Id.* at * 24.

counsel. *Id.* at 18. At the hearing, DHS's counsel indicated that he needed to be present because "if the PLC [is] vacated[,] then [C]hild comes back to DHS." *Id.* at 21. At the conclusion of the hearing, the court ordered the parties to brief what it deemed "an issue of first impression," *id.* at 22, stating: "Issue number one is, is the child free for adoption if PLC has been granted to a person other than the petitioner for adoption [and i]ssue two [is, c]an a person who only has PLC sign consent to an adoption petition filed by another person?" *Id.* at 24. The court then directed the parties to file their briefs on the two issues "with the adoption branch and send a copy to [Judge Jonathan Q. Irvine's] chambers[.]" *Id.*

On July 2, 2025, the trial court dismissed, without prejudice, T.H.G.'s petition to adopt Child, recognized that unsubsidized PLC[3] of Child had been awarded to maternal grandmother, C.S., and noted that "[**a**]**ny modification of th[e] order must be done through [the] Domestic Relations Branch of Family Court**[.]" Order Denying Petition/Motion, 7/2/25, at 1 (emphasis added). The trial court concluded that the case should be transferred to the dependency court for a determination as to whether T.H.G. should be granted PLC of Child. Then, only if the court were to grant T.H.G. permanent legal

_____

[3] Permanent legal custody is a placement option under the Juvenile Act that places custody of a dependent child in a custodian, yet does not terminate the parents' parental rights. *In re B.S.*, 861 A.2d 974, 977 (Pa. Super. 2004). Under this placement option, "[w]hen deemed appropriate, the trial court has the power to permit continued visitation by the [dependent] child's natural parents." *Id.*

custody of Child, could she then properly petition to adopt Child. *See* Trial Court Opinion, 8/1/25, at 8.

T.H.G. filed a timely notice of appeal and contemporaneous Pa.R.A.P. 1925(b) statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i). T.H.G. raises the following issues for our consideration:

(1) Did the trial court abuse its discretion by denying adoption when Judge Murphy found all requirements satisfied on July 12, 2024?

(2) Did the trial court violate due process by stating "my order is final" then informing Superior Court it was "interlocutory"?

(3) Did the trial court err by relying on a document that was never properly entered into the record and never served on the PLC holder?

(4) Did the trial court err by imposing contested adoption procedures on an uncontested private family adoption?

(5) Did the trial court violate due process through *ex parte* hearings and false attendance records?

(6) Did the trial court violate the ADA by denying accommodations to [T.H.G.] while granting them to [a]ttorneys?

(7) Did the trial court err by allowing DHS participation through Michael Mon as "Amicus Curiae" when DHS lacks standing?

(8) Did the trial court violate best interests by ignoring the child's statement[,] "I'm here for my adoption"?

(9) Did the trial court err by ignoring Judge Grey's 2019 ruling that contested adoption was "moot"?

(10) Does the pattern of judicial misconduct require recusal?

Appellant's Brief, at 11-12 (unpaginated).

In matters arising under the Adoption Act, "our plenary scope of review is of the broadest type; that is, an appellate court is not bound by the trial

- 7 -

court's inferences drawn from its findings of fact and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported." ***In re Adoption of K.B.***, 311 A.3d 1166, 1169 (Pa. Super. 2024) (citation omitted). Additionally, our standard of review is for an abuse of discretion. "This Court will not conclude that there is an abuse of discretion merely because we would have reached a different conclusion." ***Id.***, citing ***In re K.D.***, 144 A.3d 145, 151 (Pa. Super. 2016) (citation omitted).

Prior to addressing the merits of T.H.G.'s claims on appeal, we must first determine whether she has properly invoked our appellate jurisdiction. Under Pennsylvania law, an appeal may be taken from: (1) a final order or an order certified by the trial court as a final order, ***see*** Pa.R.A.P. 341; (2) an interlocutory order as of right, ***see*** Pa.R.A.P. 311; (3) an interlocutory order by permission, ***see*** Pa.R.A.P. 312, 1311; 42 Pa.C.S.A. § 702(b); or (4) a collateral order, ***see*** Pa.R.A.P. 313. A final order is any order that disposes of all claims and all parties or is entered as a final order pursuant to the trial court's determination. ***See*** Pa.R.A.P. 341(b)(1), (3).

Notably, the trial court states in its Rule 1925(a) opinion that:

As this Court has found that this case should be heard in the Domestic Relations Branch of Family Court, the substantive merits of the case have not been heard. As such, this court does not possess testimony and evidence for all the remaining errors complained of on appeal. . . . Accordingly, based on the long history of this case, the inconsistencies and questions raised by the [T.H.G.]'s actions and, ultimately, the best interest of the child, the trial court's order entered on July 2, 2025 <u>transferring</u>

> jurisdiction to the Domestic Relations Branch of Family Court, PLC court, should properly be affirmed.

Trial Court Opinion, 8/1/25, at 8, 8 n.2 (emphasis added).

First, the trial court specifically states (and the record bears out) that its order did not dispose of the substantive claims in T.H.G.'s adoption petition. Thus, it is not final under Rule 341, and the trial court has not certified it as such. *See* Pa.R.A.P. 341(b)(3), (c). Second, no one argues that this is a collateral order under Rule 313, and it clearly does not fit within that rubric where the issues in this appeal are not separate from or collateral to the underlying dependency proceeding. *See in the Interest of J.S.C.*, 851 A.2d 189 (Pa. Super. 2004).

Finally, under Rule 311(c), "[a]n appeal may be taken as of right from an order in a civil action or proceeding . . . transferring the matter to another court of **coordinate** jurisdiction[.]" Pa.R.A.P. 311(c) (emphasis added). Here, while there may be coordination between court divisions in a county, in Philadelphia, the Family Court Division, or Family Court, is one of three major divisions of the Court of Common Pleas. The Family Court consists of two branches: Juvenile and Domestic Relations. While the Juvenile Branch deals with adoption proceedings, among other things, the Domestic Relations Branch deals with custody. *See* https://courts.phila.gov/common-pleas/family/ (last visited 12/3/25). *See also* 23 Pa.C.S.A. § 2301 ("The court of common pleas of each county shall exercise through the appropriate division original jurisdiction over . . . adoption proceedings."). Thus, the two branches are *not* courts of coordinate jurisdiction, but, rather, are separate

courts that handle their own cases independently and, sometimes, concurrently. Therefore, the order does not qualify as an interlocutory order appealable as of right. *See* Pa.R.A.P. 311(c).

Instantly, the order on appeal implicates not only T.H.G.'s adoption petition (which is under the jurisdiction of the Juvenile Branch in Philadelphia), but also C.S.'s permanent legal custodianship. *See* PLC Order, 2/4/21 (order stating "said custody shall remain in effect until further [o]rder of the [c]ourt or until the child attains the age of majority, not to exceed the age of 21"). Moreover, the court's order specifically states that "any modification of th[e PLC] order must be done through the Domestic Relations Branch of Family Court." Order Denying Petition/Motion, 7/2/25, at 1 (emphasis added). Thus, the effect of the order T.H.G. has appealed is to transfer the adoption matter to the proper court—the Juvenile Branch. As the trial court acknowledges, the order neither disposes of nor considers the merits of T.H.C.'s adoption petition. *See* Trial Court Opinion, 8/1/25, at 8, 8 n.4 (trial court stating "the substantive merits of the case have not been heard"); *see also* Appellee's Brief, at 10 ("This action was not a denial on the merits but a jurisdictionally appropriate response to unresolved procedural and custodial issues. [Child remains under the jurisdiction of the dependency court, and the trial court correctly recognized that any attempt to override or modify the existing PLC arrangement must be addressed in the originating forum."). Accordingly, because the order is not final, collateral, or interlocutory as of right or by permission, we lack jurisdiction to review T.H.G.'s appeal.

Appeal quashed.[4]

_____

[4] We recognize the lengthy journey this case has taken since Child's placement two days after her birth, and we do not diminish the need for stability and permanency for Child. However, under both the Juvenile Act and the Adoption Act, the best interests of the child remains the focal point. Thus, we trust that by transferring this matter to the correct branch of the Family Court, a full and proper review of T.H.C.'s petition will take place forthwith and the relevant issues will be properly resolved under the best interest standard. As the Court stated in **In re Adoption of J.E.F.**, 902 A.2d 402 (Pa. 2006):

> We read the[] provisions [of 23 Pa.C.S.A. §§ 2711(a)(5) and 2713(2)], which must be construed together, as making clear that the trial court, and not the Agency or any other person or entity with a power of consent (save the adoptee), is to determine what role a conferred, or withheld, consent should have upon the adoption proceedings. **See Hess**, 608 A.2d at 14 ("the Act makes clear that the court has the final burden of determining whose consent is necessary;" notion that [] opinion of [] custodial agency "will somehow control the outcome of the adoption is therefore baseless") (citing [23 Pa.C.S.A. §] 2713(2)). This statutory construct makes sense since it is the court, and not an agency or any other entity, which has the ultimate responsibility to determine what will be in the best interests of the adoptees. At all stages of the proceedings, the best interest of the child is the paramount consideration. **Hess**, 608 A.2d at 13, citing 23 Pa.C.S.[A.] § 2902(a). **See also Hess**, 608 A.2d at 14 ("the Act clearly focuses on the needs of the child, reflecting the policies expressed at common law;" "[t]he agency's wishes, therefore, are to be considered in light of that objective."). The Act decidedly does not award the very keys of the courthouse door to the custodial agency.

**Id.**, at 412. Similarly here, the trial court is the entity that must determine what weight to accord the PLC's purported consent in any adoption proceedings instituted by T.H.G. Where the court has the discretion to dispense with the consent requirement, **see** 23 Pa.C.S.A. § 2713(2), a PLC should not dictate whether T.H.G. prevails in her petition to adopt. Rather, "as part of [it]s overall substantive evaluation of whether it is in the best interest of [C]hild" to proceed with the petition for adoption, the trial court should consider, as relevant, both the PLC's and the agency's involvement and
_(Footnote Continued Next Page)_

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/13/2026</u>

_____

familiarity with Child over the life of these dependency and permanency matters. It is established that DHS no longer supervises Child; custody has been awarded to C.S. on a permanent, albeit modifiable, basis. It is, however, worth emphasizing that the basis for DHS' filing the PLC petition was due to the fact that T.H.G. was no longer a safe placement for Child. Implicit in granting PLC, a court must first determine that neither reunification nor adoption is suited to a child's safety, protection[,] and physical, mental, or moral welfare. **S.B.**, **supra** at 983-84. Likewise, to grant T.H.G.'s petition to adopt, the court would have to determine that the current PLC placement is no longer in Child's best interests, in addition to finding that it *is* in Child's best interests to be adopted by T.H.G. **See** PLC Order, 2/4/21 (order noting "said custody shall remain in effect until further [o]rder of the [c]ourt").