J-A25006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.S., JR., MINOR CHILD | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.S., M.S., AND T.B. | : : : : : : : | |
| | : | No. 381 WDA 2022 |

Appeal from the Order Dated March 17, 2022,
in the Court of Common Pleas of Washington County,
Orphans' Court at No(s):  63-21-1272.

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED:  December 1, 2022**

In this matter, T.S. (Great Aunt), her husband M.S. (Great Uncle) and her sister T.B. (Great Aunt), collectively "the Relatives," appeal from the denial of their request to intervene in the adoption matter involving their one-year-old nephew, Z.S., Jr. (the Child).  The Child had been the subject of a dependency case that resulted in the termination of parental rights. Thereafter, the Child was adopted by his foster parents.  Only after the orphans' court issued the adoption decree did the Relatives seek to intervene. They also sought to vacate the adoption decree. After careful review, we affirm.

The relevant history is as follows.  The Child was born in November 2020.  For the first few months of his life, the Child resided in the home of D.B., the paternal grandmother (who is the sister of T.S. and T.B.).  In January

2021, Washington County Children and Youth Services (CYS) removed the Child and placed him in the foster home of Sa.B. and Sh.B. (Adoptive Parents). The dependency case proceeded over the next ten months. The orphans' court ultimately granted the petition filed by CYS and terminated Mother's rights on October 28, 2021. The purported father, whose paternity had apparently never been established, died earlier during the dependency proceedings. By the decree issued on February 10, 2022, the Adoptive Parents formally adopted the Child.

In their Brief, the Relatives allege another set of facts. First, the Relatives claim CYS told them the Child would eventually be returned to the Paternal Grandmother's home. At one point during the Child's dependency proceedings, CYS petitioned the court to allow the Relatives to visit the Child. The court granted the petition and ordered visitation between the Child and the Relatives, as the foster parents allowed. The Relatives also allege that during the dependency proceeding, CYS promised to keep them informed so that they could file a competing adoption petition at the appropriate time. The Relatives explain that T.S. and M.S. are approved foster parents in their own right. The Relatives had retained an attorney in Fall 2021 so that they would be prepared to file a petition for adoption. They did not learn about the adoption by the foster parents until after it occurred. The Relatives fault CYS for not informing them of the termination of parental rights or of the foster parents' adoption petition. They allege that CYS intentionally lulled them into a sense of complacency.

On February 14, 2022, four days after the issuance of the adoption decree, the Relatives learned of the adoption proceedings. They filed a Report of Intention to Adopt on the same day. On February 22, 2022, the Relatives filed an Emergency Motion to Intervene. On March 1, 2022, the orphans' court denied their request, but directed CYS to disclose to the Relatives details of the dependency case. Evidently, CYS had not been responsive to the Relatives inquiries – ostensibly, because the adoption decree had already been entered, coupled with the fact that the underlying dependency case was a sealed juvenile record. On March 7, 2022, the Relatives filed an Emergency Motion to Vacate the Adoption Decree. By order of March 10, 2022, the orphans' court issued an order, which stayed the decree and scheduled an evidentiary hearing for March 17, 2022, to consider the issues raised.

But at the hearing, the court primarily addressed the Relatives' failure to provide proper notice to the Adoptive Parents. (The Adoptive Parents were able to retain counsel the day before the hearing, and counsel appeared.) Counsel for the Relatives argued that a continuance would ensure all the interested respondents had proper notice of any of the Relatives' prior filings, starting with their Motion to Intervene. However, the Relatives' imperfect notice was only one of the court's concerns. The court was also troubled by the fact that the decree had been entered prior to the Relatives' filings. The orphans' court ultimately lifted the stay and denied the Relatives' Motion to Vacate the Adoption Decree.

The Relatives filed a Motion for Reconsideration, which the orphans' court denied. The Relatives filed this appeal on March 31, 2022. Specifically, they appeal three orders: 1) the March 1 order denying their Motion to Intervene; 2) the March 17 order, which lifted the stay and dismissed the Motion to Vacate the Adoption Decree; and 3) the February 10, 2022 adoption decree *nunc pro tunc*. They present the following issues for our review:

1. Did the orphans' court commit an error of law and/or an abuse of discretion in determining that the Relatives did not have standing to intervene?

2. Did the orphans' court commit an error of law and/or an abuse of discretion in staying the adoption decree, then lifting the stay without a hearing?

3. Did the orphans' court commit an error of law and/or an abuse of discretion in failing to proceed with a hearing to vacate the adoption decree and thereafter in failing to vacate the adoption decree?

4. Did the orphans' court commit an error of law and/or an abuse of discretion in denying the Relatives a hearing to determine if they should have been notified of the adoption hearing?

5. Did the orphans' court commit an error of law and/or an abuse of discretion in determining that notice to the attorney who filed the adoption petition on behalf of the Adoptive Parents was not sufficient notice of the motion filed by the Relatives?

**See** Relatives' Brief at 3-4 (cleaned up).

In its Pa.R.A.P. 1925(a) opinion, the orphans' court determined that it lacked authority to grant the Relatives' requested relief, because they waited until after the entry of the adoption decree to intervene in the proceedings. On appeal, the Appellees (CYS, the Child *via* his guardian *ad litem*, and the

- 4 -

Adoptive Parents) advance substantially the same argument. Before we discuss these appellate issues, we address the ramifications of the Relatives' delay in filing.

The Relatives' issues involve questions of law, for which our standard of review is *de novo* and our scope of review is plenary. ***See Interest of K.N.L.***, --- A.3d ---, at *5, 2022 WL 10719028 (Pa. October 19, 2022) (citations omitted). In matters arising under the Adoption Act, our plenary scope of review is "of the broadest type." ***Id.*** (citations omitted). In these matters, an appellate court is not bound by the trial court's inferences drawn from its findings of fact, and is compelled to perform a comprehensive review of the record for assurance the findings are competently supported. ***Id.*** (citations omitted).

Pennsylvania Rule of Civil Procedure 2327 provides, in relevant part:

> At any time ***during the pendency of an action***, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> […]
>
> (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.C.P. 2327(4) (emphasis added).

This Court has held that "an action or suit is 'pending' from its inception until the rendition of a final judgment." ***U.S. Bank National Association for Pennsylvania Housing Finance Agency v. Watters***, 163 A.3d 1019, 1027

(Pa. Super. 2017); *see also Admiral Homes, Inc. v. Floto Management Corp*, 156 A.2d 326, 328-29 (Pa. 1959) ("[I]ntervention is proper only during the pendency of an action; after final adjudication such an application comes too late.").

Instantly, the Relatives filed their motion to intervene on February 22, 2022, which was 12 days after the entry of the adoption decree. We conclude that the adoption proceedings were no longer pending, and thus the orphans' court was correct to determine that the Relatives' intervention was improper.

In reaching this conclusion, we are also guided by our recent decision in *Interest of K.C.C.*, 2020 WL 974233 (Pa. Super. 2020) (non-precedential decision).[1] There, a grandmother sought to intervene 13 days after the orphans' court issued a decree granting the adoption petition filed by the foster parents. We concluded that the grandmother was too late. "Regardless of whether [the grandmother] could have intervened in the prior proceeding, she did not and, therefore, she is not a party with standing to appeal the adoption decree." *K.C.C.* at *4.

Notably, the Relatives do *not* argue that their Motion to Intervene was timely, because it was filed within the 30-day window for the orphans' court modify its orders. *See* 42 Pa.C.S.A. § 5505 ("Modification of orders"). Rather, they argue that they were parties, as evidenced by the fact that they received visitation during the dependency proceedings, and therefore entitled to notice

---

[1] Per 210 Pa. Code § 65.37, non-precedential decisions of this Court issued after May 1, 2019 may be cited for their persuasive value. *See also* Pa.R.A.P. 126(b).

of the adoption petition. According to the Relatives, if a petitioner obtains an adoption decree without first providing notice to the interested parties, then the court must vacate the faulty decree.

For support, the Relatives rely on *In re Adoption of R.J.S.*, 889 A.2d 92 (Pa. Super. 2005). In *R.J.S.*, we affirmed the trial court's decision to revoke the adoption decree, where the adoptive parents – an aunt and uncle – failed to give grandparents notice of the adoption petition. This Court concluded that the grandparents were entitled to notice of the adoption petition, pursuant to Section 2721 of the Adoption Act. *See* 23 Pa.C.S.A. § 2721. Section 2721 provides:

> The court shall fix a time and place for hearing. Notice of the hearing shall be given to all persons whose consents are required *and to such other persons as the court shall direct*. Notice to the parent or parents of the adoptee, if required, may be given by the intermediary or someone acting on his behalf. Notice shall be by personal service or by registered mail to the last known address of the person to be notified or in such other manner as the court shall direct.

*Id.* (Emphasis added).

We reasoned that the grandparents were "such other persons" requiring notice, because the grandparents had partial custody of the child, and thus were parties to the custody litigation with the aunt and uncle. *R.J.S.*, 889 A.2d at 97. Perhaps most significantly, the trial court had previously directed the parties, in its custody order, to keep one another informed. *R.J.S.* 889 A.2d at 94, 96 (citing 23 Pa.C.S.A. § 2721). The aunt and the uncle

conveniently omitted the grandparents' involvement with the child when they petitioned for adoption.

Returning to the instant matter, the Relatives argue they were in the same position as the grandparents in *R.J.S.* They maintain they were similarly entitled to notice under the "such other persons" clause of Section 2721, because they were parties, having received some visitation during the dependency proceedings. For good measure, they argue that they were similarly deceived by CYS, just as the grandparents were deceived in *R.J.S*.

We find *R.J.S.* to be distinguishable from the instant matter. To the extent that one's custody rights require due notice of any subsequent adoption petition under Section 2721, we would still conclude that the Relatives merit no relief. Notably, the Relatives had no custody rights to the Child. While the Relatives' visitation was reduced to a court order, that order only granted visitation to the Relatives "as determined…by the foster family ([the now-Adoptive Parents])." *See* Order of Court, 9/9/21. The Relatives never had any independent ability to access the Child. *See D.P. v. G.J.P.*, 146 A.3d 204, 210 n.7 (Pa. 2016) ("Visitation and custody are distinct concepts. Visitation pertains to the right to visit a child but does not include the ability to remove the child from the custodial parent's control.") (Further citations omitted). The foster parents were the unilateral gatekeepers of this visitation, and the custody of the Child had been transferred to CYS. For these reasons, we conclude that the Relatives' tangential involvement during the dependency

proceedings did not entitle them to notice of the adoption petition under Section 2721.

The Relatives advance a secondary argument, namely that they had standing to intervene in the adoption proceedings under *In re Adoption of Hess*, 608 A.2d 10 (Pa. 1992) and *In re Adoption of J.E.F.*, 902 A.2d 402 (Pa. 2006). The Relatives did not have the benefit of our Supreme Court's recent decision in *Interest of K.N.L.*, --- A.3d ---, 2022 WL 10719028, at *1-19 (Pa. October 19, 2022), which further defined the jurisprudence on this issue. But none of those precedents is particularly helpful in this matter. In each of those cases, the appellant(s) petitioned the court prior to the issuance of the adoption decree. Because the action was still pending, the standing issue was then analyzed under Rule 2327.

Here, we do not reach this level of inquiry, because the Relatives filed their action after the adjudication took place. In other words, the Relatives fail the threshold question in Rule 2327 – whether the action is pending. Because the action was no longer pending when they filed their petition, we do not reach the question of whether the Relatives had a right to intervene under Rule 2327(4) and our precedents.

As a final note, we observe that the Relatives and the Appellees dedicate substantial portions of their appellate arguments to blame one another for the Relatives' delay. These arguments lack both evidentiary support and legal relevance. Whatever inference we could draw against one side, could just as easily cut against the other. We highlight these arguments, because the

litigants have indicated that after this matter is resolved, and passions have cooled, a relationship between the Relatives and the Child might be possible. Thus, to further aid the cooling process, we remind the Relatives that even if they survived the standing inquiry under Pa.R.C.P. 2327, the orphans' court might have still refused their intervention for undue delay, pursuant to Pa.R.C.P. 2329(3). **See also In re T.T.**, 842 A.2d 962, 965 (Pa. Super. 2004) (affirming the trial court's refusal to let a stepfather intervene in a child's dependency proceedings, having failed to exercise his rights until 10 months after the child's dependency adjudication); **see also K.N.L.**, at 17, n.21. And even if the Relatives survived **that** inquiry and were ultimately able to vacate the existing adoption decree, and were able to file their competing adoption petition, there would still be no guarantee that the court would find that their proposed adoption would be in the Child's best interests.

Nothing in our decision should be construed as a judgment of the parties' intentions or this Court's preference of who should become the Child's adoptive parents. We function as an error-correcting court. In this case, we find no error. The orphans' court properly denied the Relatives' Motion to Intervene and Emergency Motion to Vacate the Adoption Decree. Intervention would have been improper, because the adoption proceeding was no longer pending after the orphans' court issued the decree. Moreover, revocation of the adoption decree was not warranted, because the Relatives were not entitled to notice of the adoption petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2022