J-E02001-22

2023 PA Super 10

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.J.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 519 MDA 2021 |

Appeal from the Decree Entered March 31, 2021
In the Court of Common Pleas of Bradford County Orphans' Court at
No(s):  18 ADOPT 2020

BEFORE:  PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

DISSENTING OPINION BY KUNSELMAN, J.:          **FILED JANUARY 19, 2023**

In this matter, Former Stepfather asks this Court to consider, *inter alia*: 1) whether the orphans' court erred when it denied his competing petition for adoption; 2) whether the orphans' court erred when it failed to rule on his petition to intervene; and 3) whether the orphans' court abused its discretion in failing to appoint legal counsel and/or a guardian *ad litem* for the Child. *See* Majority Opinion at 3-4; *see also* Former Stepfather's Original Brief at 4.

The Majority agrees with Former Stepfather in all three respects. Consequently, it vacates the Current Stepfather's adoption decree, as well as the order dismissing Former Stepfather's petition to intervene and adoption petition, and it remands for a new hearing and for the appointment of counsel for the Child. *See* Majority Opinion, at 19-20.

I respectfully dissent from my learned colleagues in the Majority on each point. Summarily, I conclude the orphans' court correctly dismissed Former Stepfather's competing adoption petition – *i.e.*, his independent cause of action – because Mother withheld her consent. Furthermore, the orphans' court correctly denied Former Stepfather's petition to intervene – *i.e.*, intervene in the separate litigation involving the Current Stepfather's adoption petition – because Former Stepfather was not aggrieved by Current Stepfather's petition. Finally, the orphans' court had discretion to appoint representation for the Child in an adoption proceeding but was not mandated to do so; and this Court lacks the authority to review *sua sponte* such a decision. Therefore, I would affirm the orphans' court's decree granting the adoption of the Child by Current Stepfather.[1]

## I. Former Stepfather's Competing Adoption Petition

This action began when Mother filed a petition to terminate the parental rights of Biological Father, contemporaneously with Current Stepfather's petition to adopt the Child. Former Stepfather then filed a competing petition for adoption. Significantly, Mother only consented to the adoption petition filed by Current Stepfather. Noting Mother's lack of consent, the orphans' court dismissed Former Stepfather's competing petition.

The Majority opines that the orphans' court erred when "focused on the absence of Mother's consent" in dismissing Former Stepfather's petition. ***See***

---

[1] I only address the three issues discussed by the Majority, but I would conclude Former Stepfather's other appellate issues merit no relief.

Majority Opinion at 13. According to the Majority, the orphans' court should have conducted a hearing to determine whether Former Stepfather had standing. The Majority reaches this conclusion by relying on our Supreme Court's recent decision in *Interest of K.N.L.*, 284 A.3d 121 (Pa. 2022).

However, the Majority relies too heavily on the similarities between the instant case and *K.N.L.*, without analyzing the key difference between the two cases - that *K.N.L.* involves an agency adoption and this case involves a stepparent adoption. *See* Majority Opinion at 10, 13. In its misconstruction of *K.N.L.*, the Majority conflates the question of standing to petition for adoption in an agency adoption, with the question of whether a parent's withheld consent defeats a stepparent adoption. The question of standing is not the right question to ask for a stepparent adoption. Instead, the question is whether an individual may file a competing adoption petition, over the withheld consent of the child's parent whose rights remain intact. That answer is no.

The Adoption Act provides: "Any individual may become an adopting parent." 23 Pa.C.S.A. § 2312. This provision is only the starting point in any standing analysis involving an adoption. *See generally K.N.L.*, 284 A.3d at 139-140. "Notwithstanding this [] open-ended approach, the Act does, in other provisions, impose exacting substantive and procedural requirements regarding the official record necessary to support a decree in both private adoptions and those involving children in foster care." *Id.* at 139; *see also* 23 Pa.C.S.A. § 2701 (relating to contents of a petition for adoption).

Among those other provisions is Section 2711, which mandates that a party seeking to adopt must obtain the consent of certain individuals. ***See id.*** at 139; ***see also*** 23 Pa.C.S.A. § 2701(7).[2]   Sometimes those required consents may be excused.   When the Majority overlooked the distinction between an agency adoption and a stepparent adoption, it failed to appreciate the difference between an agency's consent and a parent's consent.   And it misunderstood when the orphans' court may excuse the consent requirement and when it may not.

The Adoption Act mandates that the parents of a child must consent to the child's adoption. 23 Pa.C.S.A. § 2711(a)(3).[3]  In a typical agency adoption, like ***K.N.L.***, consent of the parents is not required, because the parental rights of both parents have already been terminated. ***See*** 23 Pa.C.S.A. § 2714.[4]

_____

[2] "A petition for adoption shall set forth: (7) That all consents required by Section 2711 (relating to consents necessary to adoption) are attached as exhibits or the basis upon which such consents are not required." 23 Pa.C.S.A. § 2701(7).

[3] "**(a) General Rule. --** Except as otherwise provided in this part, consent to an adoption shall be required of the following: (3) The parents or surviving parent of an adoptee who has not reached the age of 18 years."  23 Pa.C.S.A. § 2711(a)(3).

[4]  Section 2714 of the Adoption Act provides:

> Consent of a parent to adoption shall not be required if a decree of termination with regard to such parent has been entered. When parental rights have not previously been terminated, the court may find that consent of a parent of the adoptee is not required if, after notice and hearing as prescribed in section 2513 (relating to hearing), the court

*(Footnote Continued Next Page)*

Following the termination of parental rights, the agency becomes the child's guardian, and thus the agency must consent to any subsequent adoption.  *See* 23 Pa.C.S.A. § 2711(a)(5);[5] *see also K.N.L*, 284 A.3d at 140; *and see In re Adoption of J.E.F.*, 902 A.2d 402, 411 (Pa. 2006).   Critically, the Adoption Act authorizes the orphans' court to dispense with the agency's consent, in limited circumstances when "the adoptee is under 18 years of age and has no living parent whose consent is required."  23 Pa.C.S.A. § 2713(2).

Our Supreme Court has interpreted these provisions to mean that an agency, acting as the child's guardian following the termination of parental rights, may not withhold consent to defeat a potential adoption petition.  *See In re Adoption of Hess*, 608 A.2d 10, 14 (Pa. 1992) (citing 23 Pa.C.S.A. § 2713(2)).  Subsequent cases addressed whether an agency's withheld consent deprives an individual of standing to file an adoption petition.  Our Supreme Court explained that the agency's "withheld consent alone does not destroy a party's standing under [the] traditional standing doctrine." *In re Adoption*

_____

finds that grounds exist for involuntary termination under section 2511 (relating to grounds for involuntary termination).

23 Pa.C.S.A. § 2714.

[5] "**(a) General rule.** – Except as otherwise provided in this part, consent to an adoption shall be required of the following: (5) The guardian of the person of an adoptee under the age of 18 years…**whenever the adoptee has no parent whose consent is required**." 23 Pa.C.S.A. § 2711(a)(5) (emphasis added).

*of J.E.F.*, 902 A.2d 402, 412 (Pa. 2006). *K.N.L.* further defined the standing doctrine, but only as applied in agency adoptions. *K.N.L.*, 284 A.3d at 140.[6]

This is where the Majority goes astray. *K.N.L.* and *J.E.F.* held that an *agency's* withheld consent under Section 2711(a)(5) is not a bar to standing, because the orphans' court may excuse that consent requirement under Section 2713(2). *See J.E.F.*, 902 A.2d at 404-05; *see also K.N.L.*, 284 A.3d at 140 ("As a result of the broad discretionary authority conferred to the adoption court by Section 2713 to dispense with *certain consents* in the critical context of the child's best interest, and the Act's predication of a decree on a multitude of other requirements subject to the court's satisfaction, we squarely rejected any purported relationship between the threshold issue of a party's standing, and the substantive impact of the Act's consent requirements.")(emphasis added); at 141 ("We reiterate: the *agency's withheld consent* is not a bar to standing and has no part in the analysis[.]") (emphasis added).

Those precedents, however, have no bearing on a stepparent adoption, where the parent, whose rights remain intact, has withheld her consent. Nothing in *J.E.F.*, nor *K.N.L.*, nor Section 2713 suggests that an orphans'

---

[6] A primary function of *K.N.L.* was to dispel this Court of its mistaken belief that only an individual who *currently* has *in loco parentis* status, at the time of the adoption petition, has standing. *See K.N.L.*, 284 A.3d at 138 ("[W]e observe there exists no pronouncement of this Court endorsing such a rule, or any of these criteria [articulated by our precedents], as perquisite to a non-foster-parent, third party's demonstration of standing to intervene in an action to adopt a child in the custody of an agency.").

court has discretionary authority to dispense with such a parent's consent under Section 2711(a)(3). Thus, **K.N.L.** is plainly inapposite. In my view, the Supreme Court's rationale in **K.N.L.** clearly indicates why its holding only applies where the parental rights of both parents have been terminated, and should not be extended to stepparent adoptions where one parent retains parental rights:

> "[N]othing in the [Adoption] Act precludes any party from filing a petition for adoption, nor is there anything to preclude a trial court from entertaining multiple adoption petitions and then determining the best interests of the child. Though we recognize a more stringent test necessarily applies in private custody matters due to the traditionally strong right of parents to raise their children as they see fit, there is no suggestion that a more stringent test for standing should apply in adoption matters, based upon the inherent nature of the action where no such parental rights continue to exist. In these latter situations, the appropriate parameters of standing are not drawn from the statue's provisions, but from traditional jurisprudential standing principles.

**K.N.L.**, at 142 (citations and internal quotations omitted) (emphasis added).

It makes sense that the Adoption Act would allow for a broader pool of potential adoptive parents in an agency case, where the child is essentially a temporary orphan. It would not be in the child's best interest to limit the number of qualified third parties seeking to become the child's new parent(s). This underscores why an agency's withheld consent does not, and should not, defeat an adoption petition.

In a stepparent adoption, by contrast, the parent's rights remain intact. That parent retains the right to decide who gets to engraft themselves into

the child's family tree, and even that right is limited. Here, Mother's parental rights remain intact, and thus her consent is required by law, not only as it relates to Former Stepfather's petition, but for any adoption. Unlike the consent of the agency-guardian (under Section 2711(a)(5)) in an agency adoption, the orphans' court is not authorized to dispense with a parent's consent (under Section 2711(a)(3)) in a stepparent adoption. Section 2713(2) only authorizes the court to dispense with a living parent's consent when that parent's consent is "not required" – *i.e.,* when that parent's rights have been previously terminated. **See** 23 Pa.C.S.A. §§ 2711(a)(5), 2714.

Thus, the standing question is simply the wrong question to ask regarding Former Stepfather's petition to adopt. Yes, "any individual may become an adoptive parent" under Section 2312, but that individual must still abide by the rest of the Adoption Act's "exacting substantive and procedural requirements," including the consent requirements set forth in Section 2711. **K.N.L.**, 284 A.3d at 139; **see also** 23 Pa.C.S.A. § 2701(7) (relating to contents of a petition for adoption). Put another way, whether Former Stepfather had "standing" to file a competing petition is something of a red herring. Regardless of whether Former Stepfather had standing to file a petition for adoption, his petition cannot proceed as a matter of law, because Mother withheld her consent. **See** 23 Pa.C.S.A. § 2701(7). The orphans' court correctly dismissed Former Stepfather's competing adoption petition, because the court recognized that it had no authority under Section 2713(2) to

dispense with her consent. And without Mother's consent, Former Stepfather cannot meet the *prima facie* case necessary for a stepparent adoption.[7]

## II. Former Stepfather's Petition to Intervene

In addition to filing a competing petition for adoption, Former Stepfather filed a separate petition to intervene in the adoption proceeding filed by Current Stepfather. The orphans' court, having already dismissed his competing petition for adoption, did not rule on Former Stepfather's petition

---

[7] I have additional policy concerns with the "breathtakingly broad" implications of the Majority's decision. **See Troxel v. Granville**, 530 U.S. 57, 67 (2000) (holding unconstitutional Washington state's nonparental visitation statute, which provided standing to "any person" and "at any time."). Application of the Majority's holding now opens the courthouse doors to any and all former partners to file their own petition for adoption any time one parent seeks to terminate the rights of the other parent. Under the majority's decision today, these former partners are now entitled to – at the very least – a hearing on standing to **adopt** the parent's child, even over the objection of the parent.

Former Stepfather could have proceeded with a private termination and stepparent adoption petition at any point during his marriage to Mother. Such action would have required Mother's consent. By eliminating this consent requirement **after** his divorce from Mother, the Majority gives him a right he would not have had while he was her spouse. With all due respect, the Majority's extension of **K.N.L.** to a stepparent adoption leads to an "absurd" interpretation of the Adoption Act. **See Commonwealth v. Humphrey**, 283 A.3d 275, 289 (Pa. 2022) ("When interpreting statutory provisions, we presume that the General Assembly does not intend a result that is absurd, impossible of execution, or reasonable." (citing 1 Pa.C.S.A. § 1922(1))).

I recognize Former Stepfather has been in the Child's life since her birth. It may seem cruel – and certainly not in the Child's best interests – if Mother severed the relationship between the Child and the Former Stepfather. As I discuss below, however, this inequity does not arise, because in my view, the custody rights of an *in loco parentis* former partner survive a stepparent adoption like this one.

to intervene, thereby effectively denying it. Intervention to file a competing adoption petition would not be appropriate, as I explained above. However, intervention to block Current Stepfather's adoption of the Child presents a different question, which requires a separate analysis. On appeal, Former Stepfather argues he had standing to intervene, because he had an interest in the litigation as an *in loco parentis* individual with custody rights. To answer the intervention question, we must determine whether Former Stepfather has standing.

**K.N.L.** set forth the following standing principles. "Standing relates to the capacity of an individual to pursue a particular legal action, and requires the petitioning litigant to be adversely affected, or aggrieved, in some way." **K.N.L.**, 284 A.3d at 136 (citing **Trust Under Will of Ashton**, 260 A.3d 81, 88 (Pa. 2021) and **Wm. Penn Parking Garage, Inc. v. City of Pittsburgh**, 346 A.2d 269, 280 (Pa. 1975) ("a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution")).

As for standing to file an adoption petition in an agency case, the Court held: "a proper standing inquiry reviews whether a non-foster-parent third party seeking to pursue a petition to adopt a child in the custody of an agency has a genuine and substantial interest in formalizing a permanent parental relationship with the adoptee-child, which surpasses the interest of ordinary, unrelated strangers." **Id.** at 150.

In the context of a petition to intervene in an adoption case, the Court explained that a nonparty who seeks to intervene must establish a "recognized legal interest" – one that is enforceable through, or affected by, the adoption proceedings – whether or not the moving party would ultimately be bound by the adoption decree. ***K.N.L.***, 284 A.3d at 142-43 (citing ***Hess***, 608 A.2d at 12; Pa.R.C.P. 2327[8]).   Thus, the Court concluded that if the would-be intervenor can establish an *in loco parentis* status, then the individual has also established the "recognized legal interest" for purposes of Rule 2327. ***Id.*** at 144.  ***See also K.N.L.***, 284 A.3d at 152-53 (Donohue, J. Concurring).

In ***K.N.L.***, the Court remanded for a new hearing.  At that hearing, if the appellant could establish his *in loco parentis* status, then he would have a "legally enforceable interest" that would be "affected" by the pending action involving the foster family's adoption petition.  In such a scenario, the appellant's petition to intervene would be granted under Rule 2327(4). ***See id.***, at 151; ***see id.*** at 152 (Donohue, J. Concurring).

Again, the difference between the ***K.N.L.*** and the instant matter is paramount.  In ***K.N.L.***, the appellant's recognized legal interest would be affected by the foster family's adoption; here, by contrast, Former Stepfather's recognized legal interest would ***not*** be affected by the Current

---

[8] Rule 2327(4) provides: "At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if: (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." Pa.R.C.P. 2327(4).

Stepfather's adoption. As a result, Former Stepfather's petition to intervene fails under Rule 2327(4).

To explain, in *K.N.L.*, the appellant's interest would be "affected" by the adoption by the foster parents, because such an adoption would ultimately terminate the appellant's future right to custody of the child, pursuant to 23 Pa.C.S.A. § 5326 ("Effect of an adoption"). The Court explained: "[The Child Custody Act] now provides, without condition, a 'person who stands *in loco parentis* to the child' may file an action 'for any form of physical custody or legal custody[,]' and, this right 'shall be automatically terminated upon [an] adoption.'" *Id.* at 143 (citing 23 Pa.C.S.A. §§ 5324(a), 5326). "[I]f appellant ever had any right to assert *in loco parentis* standing in a custody matter, it would be extinguished upon entry of an adoption decree." *Id.* at 144 (citing 23 Pa.C.S.A. § 5326; *E.T.S. v. S.L.H.*, 54 A.3d 880 (Pa. Super. 2012) (under Section 5326, former live-in romantic partner of the children's custodial aunt lost *in loco parentis* right to seek custody of the children when aunt adopted the children)).

Here, because this matter involves a stepparent adoption, the application of these principles produces a different result. Assuming Former Stepfather stands *in loco parentis*, he would have a demonstrable "legally enforceable interest" under Rule 2327(4). As such, Former Stepfather has standing to intervene so long as his legally enforceable interest is "affected" by the underlying adoption proceeding involving Current Stepfather and Mother.

Critically, Former Stepfather's recognized legally enforceable interest – that is, his *in loco parentis* custody rights – are **not** affected by the Current Stepfather's adoption of the Child. I conclude that the custody rights of Former Stepfather, afforded to him by Mother in their divorce decree (and as an implicit result of his *in loco parentis* status), survive the Current Stepfather's adoption of the Child.

Because this adoption involves a stepparent, as opposed to a third-party adoption by a foster parent (as in **K.N.L.**) or by an aunt (as in **E.T.S.**), the effect of the adoption yields a different result under Section 5326 of the Child Custody Act. As the Supreme Court observed in **K.N.L.**, the effect of an adoption by an unrelated third party terminates all prior rights. However, I believe one's *in loco parentis* custody rights survive an adoption when the child is adopted by a stepparent.

The Child Custody Act addresses the effect of an adoption:

> Any rights to seek physical custody or legal custody rights and any custody rights that have been granted under section 5324 (relating to standing for any form of physical custody or legal custody) or 5325 (relating to standing for partial physical custody and supervised physical custody) to a grandparent or great-grandparent prior to the adoption of the child by an individual **other than a stepparent**, grandparent or great-grandparent shall be automatically terminated upon such adoption.

23 Pa.C.S.A. § 5326 ("Effect of adoption") (emphasis added).

Although the statute allows grandparents and great-grandparents, who received custody rights under Section 5324, to retain those rights following a

stepparent adoption, the statute is notably silent regarding those third-parties who received *in loco parentis* custody rights under Section 5324(2). While our Supreme Court was clear that such rights will be terminated following an adoption by a foster parent, ***K.N.L.***, 284 A.3d at 144, it does not follow that such *in loco parentis* custody rights will necessarily be extinguished by a stepparent adoption. The statute itself does not expressly provide for the termination of these rights in a stepparent adoption.

In a stepparent adoption, one parent retains their rights. Thus, it follows that because the parent's rights remain, the rights of the individual, who received *in loco parentis* status from the parent, also remain. By contrast, after the rights of both parents have been terminated, the rights of an individual who received *in loco parentis* status from those parents are automatically terminated upon adoption by foster parents. ***K.N.L.***, 284 A.3d at 143-44 (citing 23 Pa.C.S.A. § 5326).

It would be unreasonable to conclude, in the absence of clear authority, that a stepparent adoption will automatically sever the relationship between a child and a parent's former partner who has *in loco parentis* status – a former partner who had supported and nurtured the child, and considered the child as their own. An automatic severance would certainly not be in a child's best interests.

Moreover, the Child Custody Act is perfectly equipped to address any potential acrimony between the parent, the adoptive parent, and the former partner, while simultaneously protecting the best interests of the child. ***See***

23 Pa.C.S.A. §§ 5328(a) (relating to the custody factors), 5327(b)(relating to the presumption between parents and third parties).[9]

Indeed, the automatic termination of *in loco parentis* custody rights seems contrary to precedent. In **T.B. v. L.R.M.**, 786 A.2d 913 (Pa. 2001), the Court considered whether the former same-sex partner of the mother had *in loco parentis* standing to seek custody of the child. The mother had argued that, because the former partner lacked standing to adopt the child – given the fact that this case predated the legalization of same-sex marriage – the former partner necessarily lacked standing to seek *in loco parentis* custody. The Court disagreed. **T.B.**, 786 A.2d at 918-19. "The ability to marry the

---

[9] It would not be the case that the child would be left with "three legal parents." **See** Majority Opinion at 19 (citing **In re: Adoption of R.A.B.**, 1364 EDA 2007 (Pa. Super. 2008) (unpublished memorandum)). Rather, such a holding would simply mean that a third individual has custody rights – a possibility not foreign to the Child Custody Act. **See**, **e.g.**, 23 Pa.C.S.A. §§ 5234(2), 5325 (relating to grandparent standing).

I note further that the Majority's reliance on **R.A.B.** is misguided for two reasons. First, **R.A.B.** was decided in an unpublished memorandum in 2007. Per 210 Pa. Code § 65.37, only non-precedential decisions filed **after** May 1, 2019, may be cited for their persuasive value. **See also** Pa.R.A.P. 126(b). An unpublished memorandum decision filed prior to May 2, 2019, shall not be relied upon or cited by a Court or a party in any other action or proceeding (except in certain circumstances which are not present here). **See** 210 Pa. Code § 65.37(b).

Second, **R.A.B.** was predicated upon the prior iteration of the Child Custody Act, specifically 23 Pa.C.S.A. § 5314 ("Exception for adopted children) (repealed). The text of Section 5314 was far more hostile to previously-held custody rights than the current Section 5326. The former Section provided: "**Any** visitation rights granted pursuant this section prior to the adoption of the child shall be automatically terminated upon such adoption." 23 Pa.C.S.A. § 5314 (emphasis added).

biological parent and the ability to adopt the subject child have never been and are not now factors in determining whether the third party assumed a parental status and discharged parental duties." *Id.* at 919. "[A] biological parent's rights 'do not extend to erasing a relationship between her [former] partner and her child which she voluntarily created and actively fostered simply because after the parties' separation she regretted having done so.'" *Id.* (Citing *J.A.L. v. E.P.H.*, 682 A.2d 1314, 1322 (Pa. Super. 1996)). Although *T.B.* did not involve the effect of an adoption under Section 5326, its holding suggests: 1) Former Stepfather's inability to adopt the Child has no effect on his existing custody rights; and 2) Mother lacks the authority to automatically extinguish the long-standing relationship she fostered between the Child and Former Stepfather.

Here, the stepparent adoption does not impact Mother's parental rights. Because her rights remain unchanged, so do Former Stepfather's *in loco parentis* custody rights. In my view, Former Stepfather's custody rights survive the Current Stepfather's adoption of the Child. Because Former Stepfather retains the ability to exercise and enforce his custody rights, he is not aggrieved by the adoption proceeding between Mother and Current Stepfather. Thus, he lacks standing to intervene. [10]

_____

[10] I do not believe Current Stepfather's ascension to legal parenthood has any impact on this analysis. For instance, had the petitioner in this case been a grandparent, Current Stepfather would not have the authority to deny a grandparent standing to seek custody under Section 5326. Thus, his opinion
*(Footnote Continued Next Page)*

In summation of my second point, I conclude that it is proper to apply standing principles to resolve Former Stepfather's petition to intervene. In doing so, I recognize that Former Stepfather has a legally enforceable interest. Nonetheless, I conclude that this legally enforceable interest was not affected by the Current Stepfather's adoption, because his *in loco parentis* custody rights survive a stepparent adoption. As such, Former Stepfather has no standing to intervene, because he is not an aggrieved party. The orphans' court properly denied his intervention petition.

### III. Appointment of counsel

As a final housekeeping measure, I part ways with the Majority's decision to remand for the appointment of counsel and/or a guardian *ad litem* for the Child for the adoption proceeding. I do not believe that such an appointment is mandatory under the Adoption Act. In the context of an adoption proceeding, the appointment is merely discretionary. Because Former Stepfather did not raise this question during the proceedings below, this Court lacks authority to address this issue *sua sponte.*

The Adoption Act provides:

_____

about whether Former Stepfather's rights survive the adoption is of no moment. Of course, Current Stepfather necessarily obtains parental rights as a result of his adoption of the Child. Current Stepfather may utilize those rights in custody litigation, where he may argue that it would not be in the Child's best interest for Former Stepfather to have custody. ***See*** 23 Pa.C.S.A. § 5328(a). In such an action, he would be entitled to the presumption afforded to natural parents. ***See*** 23 Pa.C.S.A. § 5327(b). The only legal impact of Current Stepfather's adoption is that Current Stepfather becomes the Child's legal parent in place of Biological Father; Former Stepfather's rights are not impacted by this substitution.

- 17 -

> **(a) Child.--**The court ***shall*** appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court ***may*** appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a) (emphasis added).

Supreme Court has explicitly addressed the difference between the words of "shall" and "may" in Section 2313(a).

> The language of Section 2313(a) at issue in this contested [termination of parental rights (TPR)] case reads, in pertinent part, "The court shall appoint counsel to represent the child ...." "The word 'shall' by definition is mandatory and it is generally applied as such." ***Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors,*** 923 A.2d 1099, 1104 (2007)(citations omitted). When a statute is unambiguous, "shall" must be construed as mandatory. ***Id.*** Here, the use of "shall" is unambiguous and hence, mandatory. The statutory language does not suggest anything other than the general meaning of the word. By contrast, the statute's second sentence uses the term "may" in connection with "any other proceeding" (*i.e.*, anything other than a contested TPR) evidencing the fact that our General Assembly knows well how to use non-mandatory language when it wishes to do so. The lawmakers codified a mandatory appointment of counsel for contested TPR cases, and, ***in the very next sentence, codified a discretionary provision for other proceedings***. There is no ambiguity in the statute. We may not manufacture one." (footnote omitted).

***In re Adoption of L.B.M.***, 161 A.3d 172, 179-80 (Pa. 2017) (emphasis added).

Thus, Section 2313(a) only mandates the appointment of counsel during the involuntary termination proceeding involving Biological Father. That proceeding is now over. Only Current Stepfather's adoption petition remains. Although the orphans' court had discretion to appoint counsel or a guardian *ad litem* for the duration of the adoption proceedings – and I would encourage the court to do so in future contested adoption proceedings – the court was under no obligation to make such an appointment. I need not discuss the Majority's interpretation of our binding precedents, for they all concern the first clause of Section 2313(a) (relating to termination proceedings) and thus are readily distinguishable. Here, the Majority's appointment is predicated upon the second clause. As our Supreme Court already clarified, this second clause is a "discretionary provision." **L.B.M.**, 161 A.3d at 179.

Moreover, we may not review the orphans' court decision to not appoint representation for the Child in this adoption proceeding. Former Stepfather did not raise an objection to or submit any request regarding the Child's lack of representation. As a result, the issue is waived. **See** Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in the trial court); **see also Fillmore v. Hill**, 665 A.2d 514, 515-516 (Pa. Super. 1995) ("[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court.") (Citation omitted). Although our Supreme Court has clearly held that the issue of appointment of counsel for a child in a contested termination case is not waivable and may be raised *sua sponte* by an appellate court (**see In re**

*Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020)), the same holding has not been applied in an adoption case. As such, I conclude that the issue is waived and that this Court lacks authority to raise it *sua sponte.*

In sum, I respectfully dissent for the following reasons: 1) Mother's withheld consent under 23 Pa.C.S.A. § 2711(a)(3) renders Former Stepfather's adoption petition not cognizable as a matter of law and a remand is unnecessary because he cannot establish a *prima facie* case for adoption; 2) Former Stepfather lacks standing to intervene in this action, because his *in loco parentis* custody rights are not affected by the Current Stepfather's adoption; 3) Section 2313(a) does not mandate the appointment of counsel and/or a guardian *ad litem* in an adoption proceeding; we may not review the lower court's discretionary decision to not appoint representation, because Former Stepfather failed to preserve the issue. Thus, I would affirm the orphans' court's decision to dismiss Former Stepfather's petitions and uphold Current Stepfather's adoption decree.

Judge Olson joins the dissenting opinion.